THE STATE OF KANSAS v. WILLIAM HORACEK et al.

INTOXICATING LIQUORS — *Illegal Sales* — *Associations*. Where an incorporated association purchases beer outside of the state of Kansas and brings it into the state, and then sells chips to its members, each chip representing a drink or glass of beer, and then furnishes a drink or glass of beer for each chip returned by a member, and the beer is drank as a beverage, and neither the association nor any one of its members has any permit to sell intoxicating liquors, *held*, that the member of the association who sells these chips, and the member of the association who delivers the beer on the return of the chips, and the president of the

association who is present at the time and knows of these things, may be prosecuted, convicted and punished for selling intoxicating liquor in violation of law.

*Appeal from Shawnee District Court.*

PROSECUTION for the unlawful sale of intoxicating liquors. Trial upon an agreed statement of facts, at the April term, 1888. The defendant *William Horacek* was found guilty on three counts of the indictment, and adjudged to pay fines amounting to $300, together with the costs, taxed at $250.85. The defendant *William Weidler* was found guilty on three counts, and adjudged to pay fines amounting to $300, and costs taxed at $250.85. The defendant *Christian States* was found guilty on two counts, and sentenced to pay fines to the amount of $200, and costs taxed at $250.85. They appeal. The material facts appear in the opinion.

*Frank Herald,* for appellants; *A. H. Case,* for appellants Fritz and Wenthe.

*S. B. Bradford,* attorney general, for The State; *Charles Curtis,* county attorney, of counsel.

The opinion of the court was delivered by

VALENTINE, J.: This was a criminal prosecution upon an indictment in the district court of Shawnee county charging the defendants, William Horacek, Christian States and William Weidler, with selling intoxicating liquors in violation of law, and without having any permit therefor. The case was tried before the court without a jury, upon an agreed statement of facts, and the court found the defendants guilty as charged, and sentenced each to pay a fine and the costs of suit, and to stand committed to the county jail until such fine and costs were paid; and the defendants appeal to this court.

It appears from the agreed statement of facts that in 1876 a society composed of German citizens and known as the "Arions" was duly organized and incorporated, principally for the purpose of social enjoyment. This society was still in ex-

istence at the time of the trial of this action, and perhaps it still exists. It holds meetings regularly every evening in "Arion Hall" in the city of Topeka, from six o'clock P. M. to eight o'clock P. M. Among the various things commonly done at such meetings is the drinking of beer, an intoxicating liquor. At the time of the commission of the alleged offense, which was in May, 1887, the society consisted of about 150 members. The defendant Christian States was a member of the society, and its president; the defendant William Weidler was a member and officer of the society, and sold chips for the society representing drinks or glasses of beer; and the defendant William Horacek was a member of the society, and its steward and bar-tender, and drew the beer which was drank at the society's meetings from kegs, and distributed it to the members thereof having and delivering to him chips. The beer used at these meetings was at different times purchased at Kansas City, Mo., at wholesale, and shipped to the society on half-car or quarter-car loads, and kept by the society at all times, and drank by the members thereof as a beverage. Neither the society, nor any member thereof, had any permit to sell intoxicating liquors. The agreed statement of facts further shows, among other things, as follows:

"7. At the meetings when a member of said society desires a glass of beer it is drawn from the keg or kegs of beer belonging to the association and drawn by the steward or bartender, and the member for whom it is drawn and who gets it, delivers to the steward or bar-tender a chip, and when he treats his friend he gives a chip for each glass of beer drank. These chips are bought by the members from certain officers of the association, and they pay twenty-five cents for eight of them, and each one of them is good for a glass of beer and nothing else. Cigars, pretzels, soda water, billiard-playing, etc., are paid for in cash. The money received from the sale of these chips, upon which the beer is obtained, is placed in the treasury of the society, to help in the payment of the expenses of said society, and the steward or bar-tender is paid by the month for his services. The steward and bar-tender has charge of and takes care of the rooms of said association.

"8. The money received from the sale of chips, upon which said beer is delivered and the money paid for cigars, soda water, etc., etc., goes into the society's treasury to keep up its funds for payment of expenses, and procuring refreshments, which expenses are, fuel, rents of hall, books, and magazines, and newspapers, and the beer used, and paying the steward or bar-tender, and no other officers draw any pay for their work. The term 'sale of chips' means that the members pay at the rate of twenty-five cents for eight chips to the members having chips for sale, which money is paid into the treasury of the society, being a sum of money equal to the cost of the beer used by him, as near as practicable, and the chips he receives show that he is entitled to receive a certain portion of the beer purchased by the association, and the chips representing the actual cost of the beer as near as practicable, there being but little if any gain or profit on the beer drank by the members, each one paying for the chips as aforesaid into the treasury an amount sufficient to pay for beer used by him. Neither of the defendants in this action has ever received any part of the money paid into the treasury by the witnesses in this action, nor any benefit in any way therefrom, except the bar-tender, William Horacek, received his monthly salary.

"9. The meetings of said association were and are conducted in an orderly manner, and said organization was organized as alleged in agreement No. 4, and the beer that is drank is not drank as a medicine but is drank as a beverage. The club has no permit to sell, barter or give away intoxicating liquors, nor has either of the defendants or any member of said society a permit to sell, barter or give away intoxicating liquors from the probate judge of Shawnee county, state of Kansas, and said society is not engaged in the drug business.

"10. The chips are sold only to members, and are paid for at the rate of eight for 25 cents, and beer cannot be had only upon the delivery of one or more of these chips, bought and paid for by the members of the association from some member of the association, and paid for at the time said chips are delivered to the purchaser."

"18. . . . Each of the above deliveries of intoxicating liquors was made at the time and place as charged in each count as referred to, and the delivery was made by the defendant William Horacek, as such steward, and he received from the party named a chip therefor, which chip had before that time been bought and paid for as aforesaid, and bought of the

defendant William Weidler, and which the said Christian States was president, and that in each case and transaction the beer was drank as a beverage; and it is agreed that the defendant William Horacek aided and assisted in keeping said place where beer was used and drank as above set forth, by being a member of said association and being its bar-tender or steward, and by being at the above-mentioned place every day, and that he receives pay by the month for his work from said society; that the defendants Weidler and States aided and assisted in keeping and maintaining said place by being members and officers of said society, and by being present at all or about all the meetings of said association, and that neither of the defendants has a permit to sell intoxicating liquors; nor has the said association a permit to sell intoxicating liquors."

The defendants claim that the foregoing facts do not show or constitute any offense. It is claimed that their association was organized prior to the passage of the prohibition act, and therefore that it could not have been and was not in fact organized with any intention of violating that act. It is claimed that neither the society nor any one of its members ever intended to violate any law, and never has *in fact* violated any law; that no sale of beer or any other intoxicating liquor has ever been made by the society or by any one of its members, as such, and that the facts stated in the agreed statement of facts do not show that any such sale has ever been made. It is claimed that the society merely purchased beer for its members, that the beer belonged to its members, and that the society merely distributed the beer in fair shares or proportions among its members who were the owners, and that the members merely drank their own beer. We do not think that any of these points are well taken. It makes no difference that the society was organized prior to the passage of the prohibitory liquor law, for by such organization the society could not and did not obtain for itself or for its members any vested right to go on forever dealing in intoxicating liquors. (*The State v. Mugler*, 29 Kas. 272.) Besides, under the law that was in force prior to the passage of the prohibition act, it was as much a violation of law to sell intoxicating liquors without a permit, then called a license, as it is now to

sell intoxicating liquors without a permit. It must also be presumed that the society and its members intended to do just what they did in fact do, and if their acts constitute any offense it must be presumed in law that they intended to commit just such an offense. From the facts stated it must on the other hand be held that the society obtained its beer lawfully, and if so, then nothing but a sale of the beer or a keeping of the same for sale would constitute any offense. The gratuitous distribution of the beer among its members, or the giving of it away to any person, or the using of it for any lawful purpose, would not constitute an offense. (*The State v. Barrett,* 27 Kas. 219; *The State v. Standish,* 37 id. 643.) But to sell the beer in any manner, directly or indirectly, would under the other facts of this case constitute an offense; and the disposition of it to members in the manner in which it was disposed of in the present case would, we think, constitute a sale. The case of *The State v. Nickerson,* 30 Kas. 545, tends to support these views. (See also the following cases: *Marmont v. The State,* 48 Ind. 21; same case, 1 Am. Crim. Rep. 447; *Martin v. The State,* 59 Ala. 34; *Rickart v. The People,* 79 Ill. 86; same case, 2 Am. Crim. Rep. 385; *The State v. Mercer,* 32 Iowa, 405.) The beer was not distributed to or among the members in equal shares, nor was it in fact distributed to them at all except as they purchased it. Under their rules some of the members might get all the beer and the others none. Those purchasing the chips would get beer while the others would not get any. The sale of the chips was really a sale of the beer, as the chips represented the beer and nothing else. The defendant Weidler sold chips and the defendant Horacek received them back and delivered the beer, hence these two defendants were directly and certainly guilty. The defendant States, however, did not sell any chips nor deliver any beer; nor did he directly participate in these sales. He however was in law equally as guilty as the others. The association owned the beer, and through its officers and agents, and in violation of law, sold and delivered the same to its members, and this selling and delivering of the beer was a part

of its business. States was the president of the association; knew what its business was, what it was organized for, and what it was doing. He was also present at its meetings when all these sales took place, and had actual knowledge thereof, and was therefore as much responsible for what took place as were any of the others. In the case of *The State v. Hunt*, 29 Kas. 764, 765, the following language is used:

"Every person who aids, assists or abets in the commission of an offense, whether present or absent, whether as principal or proprietor, or general manager, or agent, or clerk, or servant, is liable to be prosecuted and convicted and punished for such offense."

See also § 115 of the criminal code, which reads as follows:

"SEC. 115. Any person who counsels, aids or abets in the commission of any offense, may be charged, tried and convicted in the same manner as if he were a principal."

See also § 16 of the prohibition act, which reads as follows:

"SEC. 16. Every person who shall, directly or indirectly, keep or maintain, by himself or by associating or combining with others, or who shall in any manner aid, assist or abet in keeping or maintaining any club room or other place in which any intoxicating liquor is received or kept for the purpose of use, gift, barter or sale as a beverage, or for distribution or division among the members of any club or association by any means whatever, and every person who shall use, barter, sell or give away, or assist or abet another in bartering, selling or giving away any intoxicating liquors so received or kept, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail not less than thirty days nor more than six months."

We think the business carried on by this association, so far as it related to the disposition and distribution of beer, was illegal, and that all the defendants in this case participated in carrying on such illegal business; and that this, under the statutes and the authorities, renders them all guilty of the offense charged.

The judgment of the court below will therefore be affirmed.

All the Justices concurring.

*Per Curiam:* The judgment of the court below in case of *The State v. Fritz & Wenthe* will be affirmed, upon the authority of the case of *The State v. William Horacek* and others, just decided.