State *vs.* Easton Social Club.   State *vs.* Farmers' Social Club.

The appellant pleaded specially the privileged character of the communication, and the appellee demurred to the pleas.   The Court sustained the demurrer, and in this we think no error is to be found.   The pleas were too general.   *Odgers on Sland. & Lib.*, 644–5.

The third prayer of the appellee merely defined the meaning of the term malice, and was free from objection.

For the error indicated in granting the appellee's first and second prayers, the judgment must be reversed, and a new trial must be awarded.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 13th November, 1890.)

STATE of MARYLAND *vs.* THE EASTON SOCIAL, LITERARY AND MUSICAL CLUB of TALBOT COUNTY.   STATE OF MARYLAND *vs.* THE FARMERS' SOCIAL, LITERARY AND MUSICAL CLUB of ST. MICHAEL'S, TALBOT COUNTY.

*Local option Law—Sale of Intoxicating liquors by a Club—Forfeiture of Franchise.*

The furnishing of intoxicating liquors by an incorporated social club to its members for a price fixed by regulation, and paid by the member upon receipt of the liquor, constitutes a sale within the prohibition of the "local option law;" and the fact that the sales are made without profit to the corporation is wholly immaterial.

Such violation of the law by the club constitutes such abuse and misuse of its corporate powers and franchises, as to furnish legal

7                    v. 73.

cause for the forfeiture of the franchises, and the annulment of the charter of the corporation, under sections 255–258, of Article 23, of the Code, prescribing the remedies for abuse or misuse of corporate powers and franchises.

APPEALS from the Circuit Court for Talbot County.

The cases are stated in the opinion of the Court.

The causes were argued before ALVEY, C. J., MILLER, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*William E. Stewart, State's Attorney for Talbot County,* and *William Pinkney Whyte, Attorney-General,* for the appellant.

*Charles S. Carrington,* for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

The two corporations proceeded against by the State, under sections 255, 256, 257 and 258, of Article 23, of the Code, prescribing the remedies for abuse or misuse of corporate powers and franchises, were incorporated under the general incorporation law of the State, Article 23, of the Code, *as musical, literary and social clubs.* Both corporations are of Talbot County,—the one located at the town of Easton, in the first Election District, and the other at the town of St. Michael's, in the second Election District, of that county. In both of these election districts the law, known as the Local Option Law, is, and has been for several years past, in operation, which prohibits the sale of spirituous or fermented liquors. The charge of abuse and misuse of corporate franchises against these corporations is, that they have been selling spirituous and fermented liquors in violation of the law.

In the articles of incorporation, among other things, it is provided, that the corporation shall have power "to make contracts relative to said corporation, to sue and be sued, to plead and to be impleaded, in any Court of law or equity of competent jurisdiction; to adopt a constitution and to make by-laws, rules and regulations, *not contrary to the laws of this State;* to purchase, take, hold, and enjoy any estate, real, personal or mixed, for the use of said corporation, not to exceed in value the sum of," &c.

In the answers to the petitions filed by the State, the corporations state and set forth—

"That the said club is conducted for the use of the members only, to provide for their rational entertainment and amusement; that it transacts no business whatsoever for the purpose of making any profit directly or indirectly for itself or its members, and that the income derived from the various sources hereinafter enumerated is applied solely to defraying the expenses of the corporation. That the sources of income are as follows:

"1st. The entrance fee of three dollars for each new member. 2nd. Such monthly dues as shall be assessed by the board of governors each month. 3rd. Money paid by members for what refreshments, liquors and cigars they obtain for their personal use at the club house. 4th. Such additional assessments, fines and penalties as may be, from time to time, imposed upon the members.

"The money received from these various sources is expended in paying the current expenses of the corporation; and the first three enumerated claims of sources of income have never been sufficient to pay such current expenses without the fourth.

"That the spirituous and fermented liquors above referred to are bought by the corporation and kept in the

club house under the charge of the manager, an employé of the club, under the supervision and control of the board of governors; that the members of the club, and no other persons whatsoever, can get what liquors they want by calling for them upon the steward, and paying a price fixed by the regulations of the corporation, and that this price is fixed and paid, not for the purpose of making any profit, either directly or indirectly, but merely for the purpose of covering the outlay in the purchase thereof by the corporation, and the same constitute a common fund to supply and replenish the stock of liquors so kept as aforesaid for the use of the members, and the expenses attendant upon the keeping and serving· thereof at the club house, and other expenses of the club.''

These paragraphs in each of the answers were demurred to by the State, and the demurrer was overruled; and, upon verdicts rendered upon certain issues of fact, other than the facts stated in the paragraphs of the answers demurred to, judgments were entered dismissing the petitions.

1. Whether the facts admitted by the answers demurred to present a case of abuse or misuse of the corporate privileges and franchises, such as furnish a legal cause of forfeiture, depends upon the question, whether the furnishing of spirituous and fermented liquors by the steward or manager of the club to the members thereof, upon the payment of prices fixed by the regulation of the corporation, constituted sales of such liquor· in violation of law?

This question, whether the furnishing of liquor by a club to its members, as above stated, constitutes a sale in violation of law, has been the subject of various and conflicting decisions of several of the appellate State Courts of the country.    And when the question was presented to this Court, in the case of the *Chesapeake Club*

*vs. State,* 63 *Md.,* 446, the Judges who heard the case were equally divided in opinion, resulting in the affirmance of the ruling of the Court below, which had held the club criminally liable for furnishing liquor to its members in violation of the Local Option Law.    That case, resulting as it did, may not furnish a binding precedent or authority for the decision to be made in this; but after a careful examination and comparison of all the decisions upon the subject, we are decidedly of opinion, that the furnishing of liquors by the club to its members for a price fixed by regulation, and paid by the member upon receipt of the liquor, constitutes a sale, and is, therefore, in violation of the statute.

That the revenues received by the club from the various sources mentioned in the answers, become the property of the corporation, would seem to be too plain to admit of a doubt.    It is with this fund, or a part of it, that the liquors are bought by the corporation, and they are kept as the property of the corporation, under its control, to be disposed of at prices fixed by it.    None but members, it is true, can obtain the liquor, but they can only obtain it by paying for it; and the money thus paid goes into and constitutes a part of the funds of the corporation.    The parties are competent to contract one with the other,—there being no principle to forbid a member of a corporation from contracting with or becoming a purchaser of property from the corporate body as a legal entity.    And that being so, the course of dealing as between the corporation and its individual members, as stated in the answers, present all the elements of an executed contract.    The corporation being the owner of the liquor, through its appointed agent, delivers it to the member of the corporation on his request, and receives a fixed compensation in money therefor. The property in the liquor passes to and becomes vested in the individual member, and the money paid is received

for and becomes the property of the corporation. Nothing more is or can be required to constitute a completed sale. And such being the case, why should this Court be astute and indulge questionable refinements in order to relieve these corporations of the just consequences of their acts? By holding that the supply of liquor by the club to its members, in the manner admitted by the answers, does not constitute a sale, within the prohibition of the Local Option Law of Talbot County, we should certainly afford impunity to gross violations of the spirit and intent of the statute, and thereby open the door to all the evils intended to be suppresed by it; and that done by simply allowing a combination of individuals to do what individuals without combination could not do without incurring the penalties of the law. We think the facts admitted in the answers clearly show habitual and constant violations of the law by these corporations, by the sale of liquors at their club rooms to the members of the club; and the fact that the sales were made without actual profit to the corporation is wholly immaterial, and affords no ground of defence to these proceedings. The statute, alleged to have been violated, provides that "any *person* who shall sell spirituous or fermented liquors in the first, second, third and fifth districts in Talbot County, on conviction thereof shall be fined not less than fifty nor more than three hundred dollars, and be imprisoned in the House of Correction," &c. Code Public Local Laws, Art. 21, sec. 125, codified from Act of 1884, ch. 346. The word "person" used in the statute is a generic term, and as such, *prima facie,* includes artificial as well as natural persons. This is the established rule of construction. *The Germania vs. The State,* 7 *Md.,* 1; *United States vs. Amedy,* 11 *Wheat.,* 392; *People vs. Utica Ins. Co.,* 15 *John.,* 358. Rule 12 of Interpretation of Code, page 3.

The cases which have been decided upon the view we take in this case, and hold as we do here, are *Martin vs.*

*State*, 59 *Ala.*, 34; *Marmout vs. State*, 48 *Ind.*, 21; *State vs. Mercer*, 32 *Iowa*, 405; *State vs. Lockyear*, 95 *N. C.*, 633. And the cases which hold a different doctrine are *Comm. vs. Smith*, 102 *Mass.*, 144; *Comm. vs. Pumphret*, 137 *Mass.*, 564; *Tennessee Club of Memphis vs. Dwyer*, 11 *Lea*, 452, and *Graff vs. Evans*, 8 *Q. B. Div.*, 373; though this latter case was under the English licensing Act of 1872, and would seem to be quite distinguishable from the American cases upon the subject.

The case of *Seim, et al. vs. The State*, 55 *Md.*, 566, has been much relied upon by the counsel for the appellees, but the distinguishing features of that case were adverted to in the *Chesapeake Club Case, supra;* and we do not think the case of Seim at all controlling in the decision of this case. In that case the party was indicted for selling and disposing of beer on Sunday; and it was supposed that because the license laws had never been construed to apply to social clubs, that therefore the law restraining the sale and disposition of liquor on Sunday was not intended to apply to them. But no such reasoning can apply in this case. Here the law is an unqualified prohibition to every one within the districts mentioned; and there can be no pretense that social clubs, such as the defendants in this case, were intended to be exempted from the operation of the law.

The law having been violated by the defendants, the question is, whether such violation, or rather habitual violations of law, and of duty to the public, constitute such abuse and misuse of corporate powers and franchises, as to furnish legal cause for the forfeiture of the franchises and the annulment of the charter of the corporation. And of this we entertain no doubt. A corporation can no more violate a law with impunity than an individual can; and if the unlawful acts be of a nature to be detrimental to the public, and be done by and for the corporation, by its authorized agents, there is such abuse

and misuse of its powers and franchises as will justify the State in recalling such corporate powers and franchises, and annulling and vacating the charter.    Indeed, in many cases, this is not only the appropriate, but the only efficient remedy against the corporation itself.

Having thus determined that legal cause of forfeiture has been shown, this Court, on these appeals, can do nothing more than reverse the judgments of the Court below, dismissing the petitions filed by the State, and remand the cases for further proceedings in that Court. It will be for that Court, under the statute, to take all further proceedings that may be necessary to bring the cases to a close and final judgment.    If the charters be annulled and vacated, the Court will thereupon appoint receivers of the assets of the corporations, as directed by section 258 of Article 23 of the Code.    And by section 260 of that Article, it is provided that "if the Court shall determine that legal cause of forfeiture has been shown, it may, *in its discretion*, before passing a final decree of forfeiture, pass orders requiring the said corporation, within a limited time to be therein fixed, to remedy the grievance complained of, and may suspend the passage of the final decree of forfeiture until the time so fixed, and may afterwards refuse to pass such decree, if the grievance shall have been remedied by the time so fixed."

We shall therefore reverse the judgments dismissing the petitions, and remand the cases that further proceedings may be taken in accordance with the provisions of the statute.

*Judgments reversed, and*
*cases remanded.*

(Decided 13th November, 1890.)