# CRIMINAL COURT OF BALTIMORE CITY.

Filed January 8, 1907.

THE STATE OF MARYLAND
VS.
THE MARYLAND CLUB.

*Albert S. J. Owens* and *Eugene O'Dunne* for the State.

*Bernard Carter* and *Morris A. Soper* for the Maryland Club.

HARLAN, J.—

That bona fide social clubs were not required to obtain a license to furnish liquor to their members and were not guilty of violating the Sunday Liquor Law (Act of 1866, Chapter 66), in doing so was settled by the case of Seim vs. State, 55 Md., 566, known as the Concordia Club case, decided by the Court of Appeals on March 16, 1881. Their rights in these respects were never again questioned in Baltimore city prior to the passage of the Act of 1898, Chapter 246.

Notwithstanding that the high license law in Baltimore city regulating the traffic of intoxicating liquors was passed in 1890 (Act of 1890. Ch. 343), it was not suggested that it was applicable to social clubs or was intended to change their legal status, as it has been declared in the Seim case; and a consideration of the terms of this act makes it abundantly apparent that the Legislature did not intend it to apply to such organizations.

The general Sunday liquor law (the Act of 1886, Chapter 66), is the same now as it was when the Seim case was decided. It is codified in the same words in the Code of 1904, Article 27, Section 385, and the same meaning should be given to it now as was given by the Court of Appeals in 1881; and unless the Seim case is to be regarded as overruled, so far as this statute is concerned, it would not be contrary to law for a bona-fide social club to furnish liquor to its members on Sunday.

The cases that are relied on as shaking the authority of Seim vs. State are the case of Chesapeake Club vs. State, 63 Md., 446, and State vs. Easton Social Club, 73 Md., 97. Neither of these cases involved the construction or application of the general Sunday law. The Chesapeake Club case involved the interpretation and application of the language of the 'local option law' of Anne Arundel county and the Easton Social Club case involved the interpretation of the 'local option law' of Talbot county, and the Seim case was distinguished without being overruled in either case.

When the effect of regarding a case as overruled would be to change the meaning of a criminal statute and to make that a crime which the Court of Appeals had solemnly decided to be innocent, and where this construction had been acquiesced in by the Legislature for a period of 25 years, it would be manifestly wrong and unjust to do so, and if there is no other law which will strike down the defense made by the special pleas of the defendant at bar, the Maryland Club, except the general Sunday law, those pleas must be held good and the State's demurrer thereto overruled.

Is there any such other law? Section 682 of the city charter, which is a codification of the high license law of Baltimore city, enacted by the Act of 1890, Chapter 343, hereinbefore referred to, provides that "No licensee under this sub-division of this article shall sell or furnish to any person intoxicating liquors on any days upon which elections are now or hereafter may be required by law to be held, nor on the Lord's day, commonly called Sunday, except that if the licensee is a hotel-keeper he may supply such liquors to be drunk in their rooms or with their meals to bona fide guests, nor between the hours of 12 o'clock midnight and 5 o'clock A. M. at any time, nor except in hotels shall conduct his business in any place to which an entrance shall be allowed other than directly from a public traveled way." And it is argued that as clubs are now required by the Act of 1898, Chapter 246, to procure a license to furnish liquor to their members, and must make application for such license "in the same manner as is required of retail liquor dealers" in Baltimore city, they are licenses under the sub-division of the city charter referred to and are subject to the prohibition of this section.

If this is so it will be noted that clubs have not as broad privileges as hotels with reference to furnishing liquor, and can neither furnish liquor to their members on Sunday with meals or without, nor furnish liquor after midnight, nor supply liquor in any room which does not open directly from a public-traveled way. If such was the intention of the Legislature in enacting the Act of 1898 it must be given full effect; but the question is: Was this the legislative meaning and intent?

All statutes are to be given a reasonable interpretation, and the intent of the Legislature is to be gathered primarily from the language used, but penal statutes are to be strictly construed, and acts which would not otherwise be criminal are not to be deemed to be included in the terms of a criminal statute unless it is plainly apparent that they were within the evil to be provided against.

The evil which, I think, the Legislature intended to reach by the passage of the Act of 1898, Chapter 246, grew out of the condition of the law between 1890 and 1898. During this period in Baltimore city saloons were required to pay a license fee of $250, and there were so-called high-license laws in force in other cities and towns of the State, as for example, in Havre de Grace, where the license fee under the Act of 1890, Chapter 180, Section 192, was $350. It was easy to evade the payment of these fees and commit a fraud upon the revenue of the State. A saloon-keeper, taking advantage of the general incorporation law, could get four friends to join him in executing and acknowledging a certificate for a social club, which certificate when approved by a judge as being in proper form and duly recorded, would constitute the incorporators a body corporate, and this body could carry on a retail liquor business without a license by the simple expedient of requiring any person who wanted a drink to sign a constitution as a condition precedent to getting one. In point of fact, the number of such clubs formed during this period was so great and their purpose so well known that they were familiarly spoken of as "beer clubs."

Quite a number of prosecutions were instituted against these corporators for violating the liquor laws on the theory that their corporate form was a fraudulent device to evade the license law, but it was not easy to secure convictions when the simple forms required by law for the formation of ·social clubs had been complied with, and the standing and position of bona fide social clubs were being imperiled and interfered with. I believe the Act of 1898 was passed to reach this condition, to strike down these organizations and to make all social clubs desiring to dispense liquor to their members contribute to the revenue of the State.

So far from intending to put social clubs on the same footing as saloons it seems to me to evince an intention to interfere with their previous legal status only to the extent of requiring them to apply for a license "in the same manner as it required of retail liquor dealers in such city or county," to pay for the license the same fee "as is required by law to be paid in that city or county where the club is located," and to satisfy the authorities vested with the granting of licenses before the license can be procured of the bona fide character of their organization and that the organization will not be a nuisance in the neighborhood where it proposes to locate. If club licenses were to give the same privileges as saloon licenses, and subject the clubs to the same prohibitions and penalties, why provide for investigating the bona fide character of the organization or require a list of members to be filed or provide· as the act does a different penalty for selling without license? I am of opinion that the words "shall make application for a license in the same manner as is required of retail liquor dealers in such city or county" is not to· be construed as if there was added to them "and subject to the same obligations."

Nor do I think that the Act of 1906, Chapter 278, which, amending the charter, required applicants for license to state the kind of license desired, whether a saloon license, hotel license, club license or retail grocer's license, was intended in any other respect than those named to change the obligations of clubs and make them liable to the prohibitions of Section 682, if they were not already liable thereto.

It follows, from what I have said, that the special pleas of the defendant, which set up the same facts as were held ·to exempt the Concordia Club from liability by the Court of Appeals in the Seim case, constitute a good defense to the indictment, and the demurrer of the State thereto will be overruled.

In answer to the suggestion made in argument that, if this ruling is sound, clubs are free to furnish liquor to minors and on election day, in my judgment, they can lawfully do neither. Section 86 of Article 56 of the Code of Public General Laws provides a remedy for the first, and Section 111 of Article 23 of the general

election law, provides a remedy for the latter.

As to the other evils that it is thought may follow, I have only to say that when bona fide social clubs, in their manner of exercising the privileges which they seem to enjoy with reference to furnishing liquid refreshments to their members become, in the public estimation, a menace to the peace, order or morals of the community, these privileges can be taken from them by action of the Legislature, which meets biennially to revise the laws, and whenever the acts of clubs are of such a character as to constitute an abuse or misuse of their corporate powers and franchises, these can be forfeited under proceedings which the Governor of the State has authority to direct to be instituted by the Attorney General or the State's Attorney.