[No. 6461.]

## MANNING V. THE CITY OF CANON CITY.

**Intoxicating Liquors—Social Club Dispensing—Sale—**A social club which dispenses intoxicating liquors to its members, at a price fixed by its managers, violates a local ordinance prohibiting the sale or other disposition of such liquors, even though such liquors are provided merely as incidental to the entertainment of the members of the club.  The transaction is a sale.'
—(581)

*Error to Fremont County Court*—Hon. JAMES L. COOPER, Judge.

Mr. CHAS. E. WALDO, Mr. C. C. DAWSON, and Mr. JAMES A. STUMP, for plaintiff in error.

Messrs. TAYLOR & SAYRE, for defendant in error.

CHIEF JUSTICE STEELE delivered the opinion of the court:

The defendants were found guilty of a violation of section one of an ordinance of the city of Canon City, which is as follows:

"Section 1.  Whosoever, by himself or another, either as principal, clerk, agent or servant, shall sell or dispose of, or shall give away, for the purpose of avoiding any of the provisions of this ordinance, any intoxicating, spirituous, malt, vinous, fermented, or mixed liquors, within the corporate limits of this city, or within one mile beyond the outer boundaries thereof, shall be fined not less than one hundred ($100) dollars, nor more than three hundred ($300) dollars for each offense; provided that this ordinance shall not apply to regularly licensed druggists, who may have a permit from the city council to sell such liquors, when sold in accordance with said permit."

From the judgment the defendants appealed.

The single assignment of error is, that "under the law and the evidence in this case, no judgment

against plaintiffs in error or any of them can be sustained, but that the judgment rendered therein is contrary to law, under said evidence.''

The defendants constitute the board ·of control of the Elks Club of Canon City. The club is a part of, and under the control of, the Canon City Lodge of the Benevolent and Protective Order of Elks of the United States of America. The membership of the order is in excess of a quarter of a million persons, and it, through the subordinate lodges, maintains clubs in many of the towns and cities of the country, and there are clubs of the order maintained in most of the important cities and towns of this state. This club is a *bona fide* club, and, as found by the court below, is composed of about four hundred substantial and respectable citizens of Canon City. It is maintained for the entertainment, pleasure and benefit of the members of the order, and any member of the order, whether a resident of Canon City or elsewhere, is entitled to the privileges of the club. The club is supplied with newspapers, magazines and such reading matter as the management may deem advantageous or desirable for the members. It maintains billiard, pool and card tables. Food and liquors are dispensed to such of the members as may desire them. In short, it is a social club, like any other social club to be found in the larger towns and cities of the country; the dispensing of liquors being a mere incident to, and not the object of, the organization.

It is an unincorporated association. No visitor or guest of a member is permitted to spend money in the club, but the member introducing the visitor or guest is responsible for his guest's entertainment. The club keeps on hand a supply of the various kinds of intoxicating liquors, which it dispenses to its members and guests, and the members of the order, at

the rates fixed by the board of control. Those to whom liquors are supplied may pay cash, or have the amount charged. The amount received from the members for the liquor goes to replenishing the supply of liquors, and defraying the expenses of the club.

Section 4403, subdivision 18, Mills' Ann. Stats., grants to cities and towns the right, subject to the laws of the state, to license, regulate or prohibit the sale or giving away of intoxicating liquors; and it is contended that in so far as the ordinance prohibits the disposal of intoxicating liquors, it is in excess of the powers granted by the legislature to the city. We shall not determine the question for reasons which will presently appear, but shall confine our discussion to a determination of the question whether the dispensing of liquors by the defendants, in the club-room, is or is not a sale, within the meaning of the statutes and the ordinance in question.

It is contended by counsel for defendants that the process by which members of the club obtain the title to a quantity of liquor, to be disposed of by the individual as he may desire, is not a sale but a mere distribution of the liquor of the club among its members. On the other hand, it is contended by the city that such process is a sale, and is within the prohibition of the ordinance; and upon a determination of these propositions the whole controversy depends. If such disposing of liquors constitutes a sale, then the defendants were legally convicted, and the judgment should stand; otherwise, the judgment should be reversed and the defendants discharged.

The decisions are in irreconcilable conflict. In the decisions where courts hold that clubs are exempted from the license laws, it is, generally, because of some peculiar word or phrase contained in the statute, and it should be noted that no case is pre-

sented where a prohibition statute has been construed as exempting social clubs from its operation.

In the case *State v. Kline,* 50 Or. 426, decided in 1907, and the latest case we have seen on the subject, Mr. Justice Moore, in the course of the opinion, said:

"In the note to the case of *Barden v. Montana Club,* 24 Am. St. Rep. 27, immediately following the excerpt hereinbefore quoted, the editors of that valuable series of case-law make the following observation, as deducible from an examination of adjudications applicable to the inquiry, to wit:

" 'The question whether or not the furnishing of intoxicating or fermented liquor, by a club to its members in the manner above stated constitutes a sale in violation of laws prohibiting sales, or whether or not it constitutes a sale, within the meaning of a law requiring a license before one can engage in retailing such liquor, has been the subject of various and conflicting decisions by a number of the appellate courts of the country. While the cases cannot be reconciled, the current as well, as the weight of authority, is undoubtedly in favor of the rule that the distribution and consumption of liquors, in a club, by its members, in the manner above stated, is a sale, and a violation of laws of the nature stated.'

"Several cases are cited, and quotations therefrom are contained in the note that fully sustain the conclusion thus reached, and we adopt that part of such deduction as relates to the disposal of intoxicating liquor by a club to its members, in violation of the provisions of a local option law, without further calling attention to the cases relied upon."

. In the case of *South Shore Club v. The People,* reported in volume 228 of the Illinois Reports, at page 75, decided in 1907, it is held that a social club, where liquors are dispensed to its members, is a

dramshop, within the statute which defines a dram-
shop as a place where spirituous, vinous or malt
liquors are retailed by less quantity than one gallon.
In the course of the opinion, the court said:

"The liquor belongs to the corporation as a legal
entity and no member owns any share of the liquor,
as a tenant in common or otherwise.  An association
organized merely for social, literary, scientific or
political purposes, although not incorporated, is not
a partnership.  A member of such an association has
no individual right or interest in the property, and
owns no proportionate share of it, but only has a
right to the joint use so long as he continues to be a
member.  Even if they were tenants in common, a
transfer of a specific part of the property to one for
a stipulated price would be a sale."

This decision adheres to the former opinion of
the court, and holds that it is immaterial whether the
club is or is not *bona fide;* and quotes with approval
the language of the court in 73 Maryland, and says:
"We agree with the views expressed in *State v.
Easton Social, Literary and Musical Club,* 73 Md. 97,
that there is no occasion to be astute and to indulge
in questionable refinements in order to relieve these
corporations of the just consequences of their acts,
or to endeavor, by artificial or fictitious reasonings,
to permit persons in combination to do what individ-
uals without combination could not do."

In the case of *The People v. The Law and Order
Club,* 203 Ill. 127, it is held that the dispensing of
intoxicating liquors by a social club to its members,
without having a license, is a violation of the dram-
shop act, and that the fact that the club was organized
in good faith, for social and benevolent purposes, and
not as a shift or device to evade the provisions of
the law is not material.

The earlier decision of Maryland, *Seim et al. v. The State,* 55 Md. 566, held that the dispensing of intoxicating liquors by a social club was not a sale; but the later cases, and the controlling ones in that state, *State v. Easton Social Club,* 73 Md. 97, and *State v. Maryland Club,* 105 Md. 582, hold that such dispensing of liquors is a sale. The court, in the case reported in 73 Maryland Reports, said, with reference to the other decisions of that court:

"When the question was presented to this court, in the case of the *Chesapeake Club v. State,* 63 Md. 446, the judges who heard the case were equally divided in opinion, resulting in the affirmance of the ruling of the court below, which had held the club criminally liable for furnishing liquor to its members in violation of the Local Option Law. That case, resulting as it did, may not furnish a binding precedent or authority for the decision to be made in this; but after a careful examination and comparison of all the decisions upon the subject, we are decidedly of opinion, that the furnishing of liquors by the club to its members, for a price fixed by regulation, and paid by the member upon receipt of the liquor, constitutes a sale, and is, therefore, in violation of the statute."

Supporting the doctrine announced in the foregoing decisions, are the decisions of the supreme courts of Alabama, Kansas, Kentucky, North Carolina, Mississippi, Indiana, Michigan, Georgia, West Virginia and Louisiana. And whenever the question has been presented to a federal court that court has held the clubs liable, as retailers, to pay the government tax. Not only is the greater weight of authority, but, in our opinion, the better reason, on the side of those courts that hold the transaction between the club and its members, such as we have described herein, to be an ordinary sale.

In addition to the cases we have cited are: *State v. Horacek*, 41 Kan. 87; *Martin v. State*, 59 Ala. 34; *Newark v. Essex Club*, 53 N. J. L. 99; *Kentucky Club v. Louisville*, 92 Ky. 309; *State v. Lockyear*, 95 N. C. 633; *State v. Neis*, 108 N. C. 787; *Nogales Club v. State*, 69 Miss. 218; *Marmont v. State*, 48 Ind. 21; *People v. Soule*, 74 Mich. 250; *Mohrman v. State*, 105 Ga. 709; *State v. Shumate*, 44 W. Va. 490; *State v. Boston and Pickwick Clubs*, 48 La. Ann. 485.

There are many authorities supporting the view that the transaction by which a member of a club acquires a quantity of liquor for his own use, upon the payment of the stipulated price is not a sale. It is so held in Missouri, by the supreme court, in *State v. The St. Louis Club*, 125 Mo. 308. But Judge Phillips, then district judge for the western district of Missouri, held in the case of the *United States v. Giller*, 54 Fed. 656, that social clubs, where liquor was dispensed, were retail dealers, and were required to pay the government tax. And in a case decided by the St. Louis court of appeals, *State v. Bacon Club*, 44 Mo. App. 86, it is held that such a transaction is a sale, within the prohibition of the statute of the state. The opinion closes with this significant sentence: "The principle of law that prohibits a laboring man from buying a drink of liquor in a saloon, ought to prevent wealthy gentlemen from organizing themselves into a corporation, for the purpose of selling it to their members."

In Massachusetts the supreme court holds that the distribution of liquor to the members of a club, by a transaction similar to the one before us, is not a sale.—*Commissioners v. Smith*, 102 Mass. 144. But the federal court of Massachusetts held that such transactions were sales, and the clubs were liable for the violation of the federal laws as retail dealers.— *United States v. Wittig*, 28 Fed. 774.

37

The Pennsylvania supreme court holds, in *Klein v. Livingston Club,* 177 Pa. St. 224, that where an incorporated social club is organized and conducted in good faith, owning its property in common, to which the furnishing of liquors to its members is merely incidental to the purposes for which it was organized, the furnishing of liquors does not constitute a sale. But the federal courts of Pennsylvania hold that such dealing with members of clubs does constitute a sale, and requires the clubs to pay the government tax as retail liquor dealers.—*United States v. Alexis Club,* 98 Fed. 725.

The facts in the federal case were about as they are here, and Judge McPherson in his opinion says, among other things: "Did the defendant, then, sell liquor to its members? I shall not review the irreconcilable cases upon this subject, nor make the superfluous attempt to produce a new argument in support of my conclusion. I content myself with saying, briefly, that I agree with the general opinion of the community, and hold the transaction to be a simple, ordinary sale. If a chartered club, such as the defendant, buys liquor, the legal title to this property is in the corporation, and not in the members. * * * The legal title, then, being in the corporation, it is further to be observed that, when the title passes to a consumer, it passes by a transaction that exhibits every element of a sale, and shows no outward sign of being anything else. The intending consumer asks to be served with a definite quantity of intoxicating drink. The owner of the legal title to the liquor, acting by a paid servant, agrees to the request, requires the price to be paid in cash, or accepts the consumer's promise to pay in the future, and thereupon delivers the subject of the bargain. Nothing else takes place, and, if this is not a sale,

but is really a partial distribution of the common stock, the truth is so veiled that the participants in the transaction, I venture to assert, rarely suspect that they are taking part in anything but a commonplace sale.   It is safe to say that—except, perhaps, among those lawyers that may be familiar with the discussion upon the subject—to order and receive liquor at a club is always regarded as a sale, and I see no sufficient reason for declining to accept the popular estimate of an act so generally known and so easily comprehended.  *  *  *  I may perhaps be permitted to add a single word in conclusion.  If the result that I have reached is correct, I believe it to be in the line of enforcing equality before the law; and equality before the law is a principle of American society, than which there is none more vital. Privilege, and privileged class, are, and ought to be, intolerable; and it comes irritatingly near to a privilege when social clubs, offering advantages of comfort and luxury that are only within the reach of the more prosperous, escape a share of the public burdens, because a refined reasoning declares that they are doing no more than distributing a common stock of liquor among their members, while the robust sense of the community, not excluding the club members themselves, knows the transaction to be a sale.''

There are other authorities which sustain counsel in their contention that the transaction of the club in dispensing liquor is not a sale, but we are unable to distinguish the act of the club in disposing of its liquors to its members, and any other process by which the title to intoxicating liquors is passed from one person to another, by delivery and payment.

In many of the cases cited the liquor disposed of in clubs was the property of a corporation, and the courts hold that as the legal title to the liquor was

in the corporation, and not in the individual members, that the transfer by the corporation to the member constituted a sale. And counsel attempt to distinguish between the case at bar and those cases.

When one becomes a member of the Elks club he places his interest in the club property in the hands of a board of control, and he has a joint interest in the club property as long as he remains a member, subject to the right of the board of control to dispose of it as provided by the by-laws. The testimony shows that the Elks club, through its board of control, or a servant thereof, delivers to the member on demand such quantity of liquor as he may desire, for such price as has been fixed by the board, to be paid for in cash, or to be charged to the member's account. The liquor thus delivered may be consumed by the member, or may be given away, or may be destroyed. The money that is received is used to replenish the treasury of the club, and in buying other liquors or supplies. The member, assuming that he has an interest in it, has but a minute interest, and when he exchanges his money for a quantity of liquor he pays for his minute interest, and the interest of each of the other members. But it is doubtful if he has any interest that he may take by this method of distribution.

"By becoming a member of a society or club a person acquires not a severable right to any of its property, but merely a right to its joint use and enjoyment, so long as he continues to be a member; which right ceases upon his withdrawal or expulsion from the society. The right of membership invests him with no individual transmissible interest in the property and effects of the association, and neither he nor any number less than the whole can dispose of such property, or any supposed proportionate part or

interest therein."—Am. & Eng. Enc. of Law (2d ed.), vol. 25, p. 1135.

But when the members of the club clothe the board of control with the authority to dispose of liquor to the club, they relinquish their right to have the entire property of the club remain intact for joint use, occupancy and enjoyment of all the members, and make such board their agents to dispose of the liquor; and, in our opinion, such disposal by the board is a sale pure and simple. The transaction appears to contain all the elements of a sale. Such transaction is but a contract between the parties to give and to pass rights of property for money which the buyer pays, or promises to pay, to the seller for the thing bought and sold. And it would require, to paraphrase the remarks of Judge McPherson, a refined reasoning to declare that the club is doing no more than distributing a common stock of liquor among its members, while the robust sense of the community, not excluding the members themselves, knows the transaction to be a sale.

Under the by-laws of the club any one of the several hundred thousand members of the order of Elks in the United States is entitled to all the privileges of the club, and it is not seriously contended that, under a by-law such as this, the delivery of liquor for pay does not constitute a sale; but we have determined not to base our judgment upon such fact alone. Owing to the great number of social clubs in the state, whose status concerning the disposition of intoxicating liquors should be determined, we have concluded to rest our opinion upon the broader ground, and settle the controversy.

The judgment is affirmed.            *Affirmed.*

Decision *en banc;* all the Justices concur.