## GIVENS *v.* STATE OF INDIANA.

[No. 22,650.   Filed December 16, 1914.]

1. INTOXICATING LIQUORS.—*Sale.*—*Acts Constituting.*—*Distribution by Lodge or Club.*—The act of a social fraternal order in purchasing liquor and disposing of the same to members only, by selling coupons to them good in exchange for definite quantities of liquor delivered over to coupon holding members in quantities according to a fixed schedule, amounts to a sale, and will warrant the conviction of an employe of the order who actually delivers the liquor to coupon holding members, under §8351 Burns 1914, Acts 1907 p. 689, providing that any person who shall keep, run or operate a place where intoxicating liquors are sold in violation of law, or shall be found in possession of such liquors for such purpose, shall be deemed guilty of a misdemeanor.

From Jay Circuit Court; *James J. Moran,* Judge.

Prosecution by the State of Indiana against James Givens. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Morton S. Hawkins, Whipple & Son, Smith & Fleming* and *J. F. Denney,* for appellant.

*Thomas M. Honan,* Attorney-General, and *Thomas H. Branaman,* for the State.

Vol. 182—36

MORRIS, J.—Appellant was charged by indictment with keeping a place where intoxicating liquors were sold in violation of law and having such liquors in his possession for such purpose. The charge was presented under §1 of the act of March 16, 1907, commonly called the "Blind Tiger" law. Acts 1907 p. 689, §8351 Burns 1914. The section of the act provides that any person who shall keep, run or operate a place where intoxicating liquors are sold, in violation of law, or shall be found in possession of such liquors, for such purpose, shall be deemed guilty of a misdemeanor. Appellant was tried by the court, and, from a judgment of conviction, prosecutes this appeal. His motion for a new trial, grounded on the insufficiency of the evidence, was overruled, and this action is the sole error assigned. The trial court was warranted in finding the following facts: The Order of Larks is a social, fraternal order, unincorporated, and Temple No. 1, of the order, with a membership of 150 men, is located at Portland, where the order originated; initiation fees, and dues, are paid by lodge members; this temple occupies a lodge room, billiard and assembly rooms, and parlor, comfortably furnished, and, in the rear of the billiard room, has a buffet in which there is a counter, and back bar, equipped with coils and faucets, and a beer cooler; a large quantity of beer was found in the above place by an officer who made a search, under a warrant issued for such purpose; appellant occupied the position of steward and janitor of the lodge, and he, and three members of a house committee, carried the only keys to the buffet; the beer in question was purchased by the house committee, with lodge funds, and similar purchases had been regularly made since the lodge was established; the plan of disposing of the beer was to sell tickets or coupons (to lodge members only), which were good in exchange for definite quantities of beer, and appellant, when present in the buffet, would deliver over the counter, to coupon holding members, such quantities of beer as might be desired, the members depositing coupons good for such quantities, ac-

cording to a fixed schedule, in a receptacle provided therefor; when appellant was not in the buffet, members frequently helped themselves to beer, from the cooler, and deposited tickets or coupons, in exchange therefor, in the receptacle; at times, lunch was purchased and distributed in the same manner; neither the house committee nor appellant derived any profit from handling the beer or lunch; the proceeds of ticket and coupon sales were received by the committee, and expended in the purchase of more beer or lunch, or used in paying general lodge expenses; appellant was employed on a regular salary and received no other compensation for his services; the lodge had a select membership, and no beer was delivered to persons not members of the Portland Temple; the city of Portland was "dry" under the provisions of the Proctor local option law.

The evidence presents for consideration a single question, viz., Did the disposition of the beer, by the method in use, constitute a sale, within the prohibition of the statute? The Attorney-General concedes that when the beer was purchased, it belonged to the members of the temple, in common, but contends that when a definite portion of the beer was delivered to a member in exchange for coupons or tickets, representing certain money values, the number of coupons or tickets surrendered depending on the quantity of beer received, according to a fixed schedule, the transaction constituted a sale. Appellant earnestly contends that a transaction of such character does not constitute a sale; that where liquors are owned in common by members of an unincorporated society, a division thereof among the members, by any system, cannot constitute a sale, because a person cannot sell his own property to himself. He cites *Commonwealth* v. *Smith* (1869), 102 Mass. 144, and cases from other jurisdictions, in support of the proposition.

The question here involved has been considered by most of the American state courts, and by various Federal ones. In the latter, transactions of the kind here under discussion,

are held sales. *United States* v. *Alexis Club* (1899), 98 Fed. 725. In that case, the essential facts were substantially as those here, and in the opinion by McPherson, J., it was said: "Did the defendant, then, sell liquor to its members? I shall not review the irreconcilable cases upon this subject, nor make the superfluous attempt to produce a new argument in support of my conclusion. I content myself with saying, briefly, that I agree with the general opinion of the community, and hold the transaction to be a simple, ordinary sale. If a chartered club, such as the defendant, buys liquor, the legal title to this property is in the corporation, and not in the members. * * * The legal title, then, being in the corporation, it is further to be observed that, when the title passes to a consumer, it passes by a transaction that exhibits every element of a sale, and shows no outward sign of being anything else. The intending consumer asks to be served with a definite quantity of intoxicating drink. The owner of the legal title to the liquor, acting by a paid servant, agrees to the request, requires the price to be paid in cash, or accepts the consumer's promise to pay in the future, and thereupon delivers the subject of the bargain. Nothing else takes place, and, if this is not a sale, but is really a partial distribution of the common stock, the truth is so veiled that the participants in the transaction, I venture to assert, rarely suspect that they are taking part in anything but a commonplace sale. It is safe to say that— except, perhaps, among those lawyers that may be familiar with the discussion upon the subject—to order and receive liquor at a club is always regarded as a sale, and I see no sufficient reason for declining to accept the popular estimate of an act so generally known and so easily comprehended. * * * I may perhaps be permitted to add a single word in conclusion. If the result that I have reached is correct, I believe it to be in the line of enforcing equality before the law; and equality before the law is a principle of American society, than which there is none more vital. Privilege and

a privileged class are, and ought to be, intolerable; and it comes irritatingly near to a privilege when social clubs, offering advantages of comfort and luxury that are only within the reach of the more prosperous, escape a share of the public burden because a refined reasoning declares that they are doing no more than distributing a common stock of liquor among their members, while the robust sense of the community, not excluding the club members themselves, knows the transaction to be a sale.''

The opinions of state courts are in irreconcilable conflict, but it is believed that the weight of authority favors the ,view of the Attorney-General. Whether the appellate court of a state, in any certain case, reached a logical conclusion ,has quite likely ceased to be a question of practical importance in such state, because, as a rule, subsequent amendment has relieved the statute of any need of interpretation. The decided cases of recent date, are collected and discussed in the monographic notes to the following cases: *South Shore Country Club* v. *People* (1907), 10 Ann. Cas. 386; *State* v. *Colonial Club* (1910), Ann. Cas. 1912 A 1088; *Manning* v. *Canon City* (1909), 23 L. R. A. (N. S.) 192; *County of Ada* v. *Boise, etc., Club* (1912), 38 L. R. A. (N. S.) 101.

Forty years ago this court considered and decided substantially the same question here presented, in *Marmont* v. *State* (1874), 48 Ind. 21. In that case, The Modock Club, of Indianapolis, was an unincorporated society, organized for educational, social and benevolent purposes, and held regular meetings every Sunday. Each Saturday the treasurer of the club purchased with club funds a keg of Cincinnati beer, and placed it in the club apartments. On the Sunday following any member of the club desiring it, got a glass of beer, drawn from the keg, on condition that he paid the treasurer five cents. The money received by the treasurer was deposited with club funds and used for purchasing beer and paying club expenses and sick benefits. The treasurer derived no profit from the beer transactions, but was convicted of

the offense of selling liquor on Sunday. The opinion was delivered by Buskirk, J., and holds: "As the keg of beer when purchased belonged to the society, the question arises whether the society, by its agent, could make a valid sale of such beer to the persons composing such society. * * * We know that it is the daily habit of partners to sell the firm property to the persons composing the firm, and quite frequently the members of the firm are permitted to purchase such goods or articles as they may need at cost. When a firm purchases, with partnership funds or upon credit, a sack of coffee or a barrel of sugar, the coffee or sugar belongs to the firm; but when a part of each is taken out and transferred to each member of the firm, either for cash or upon credit, a valid transfer has been effected from the firm to the individual members. So, while the beer was in the keg, it was the common property of the society, but when a portion was withdrawn and delivered to a member of the society, upon credit or for cash, the portion so withdrawn ceased to belong to the society and became the separate property of the member so receiving it, and the transaction invested him with the power to drink it himself, to give it away, to sell it, or to throw it away. But, says the learned counsel for appellant, there was no gain or profit to the appellant. It is not necessary that there should be gain or profit to him. It is sufficient if the sale or transfer inured to the benefit of his principal, the society. * * * When the society appointed the appellant its agent for the sale of its beer to the members of the association, it consented that each member might become the owner of such portion of the partnership property as he might be willing to pay for, and appropriate it to his individual use. If the transaction * * * be not an evasion and violation of the law, then a number of persons may do that lawfully which if done by one person would be unlawful. It would be a reproach to the law and its administration, if a combination of persons could, by such an arrangement, evade the

law and thwart the legislative will.  *  *  *  we are entirely satisfied that the transaction  *  *  *  amounted to a sale in violation of the law.''

The above opinion has never been questioned nor overruled. It was followed in *Haggard* v. *State* (1901), 26 Ind. App. 695. It has been cited with approval by courts in other jurisdictions, in the following cases: *People* v. *Soule* (1889), 74 Mich. 250, 41 N. W. 908, 2 L. R. A. 494; *State* v. *Horacek* (1889), 41 Kan. 87, 21 Pac. 204, 3 L. R. A. 687; *State* v. *Easton Social, etc., Club* (1890), 73 Md. 97, 20 Atl. 783, 10 L. R. A. 64; *State* v. *Boston Club* (1893), 45 La. Ann. 585, 12 South. 985, 20 L. R. A. 185; *People* v. *Law and Order Club* (1903), 203 Ill. 127, 67 N. E. 855, 62 L. R. A. 884; *County of Ada* v. *Boise, etc., Club* (1912), 20 Idaho 421, 118 Pac. 1086, 38 L. R. A. (N. S.) 101; *Manning* v. *Canon City* (1909), 45 Colo. 571, 101 Pac. 978, 23 L. R. A. (N. S.) 192.

During the last forty years our General Assembly has enacted and reënacted many laws in relation to the sale of intoxicating liquors. In the reënacted ones the legislature doubtless adopted the court's construction in *Marmont* v. *State, supra. State* v. *Ensley* (1912), 177 Ind. 483, 97 N. E. 113, Ann. Cas. 1914 D 1306. In other enactments it is probable that the General Assembly had in view the decision in that case in relation to what is required to constitute a sale of intoxicating liquors. Were we convinced that this court erred in its opinion in the Marmont case, we should hesitate to overrule it, because such action would probably thwart the legislative intent in some of the laws now in force relating to the sale of intoxicating liquor. But we are not convinced that the conclusion is erroneous, notwithstanding some eminent courts have held otherwise. *Commonwealth* v. *Pomphret* (1884), 137 Mass. 564, 50 Am. Rep. 340; *Barden* v. *Montana Club* (1891), 10 Mont. 330, 25 Pac. 1042, 24 Am. St. 27, 11 L. R. A. 593; *Koenig* v. *State* (1894), 33 Tex. Cr. Rep. 367, 26 S. W. 835, 47 Am. St. 35. On the other hand we consider the reasoning sound in the Marmont opin-

ion, and we further believe that such view is shared by a majority of the courts of American states.

There is no error that warrants a reversa'l. Judgment affirmed.

NOTE.—Reported in 107 N. E. 78. As to limitations on the doctrine of *stare decisis*, see 27 Am. Dec. 631; 73 Am. St. 98. As to the applicability of liquor laws to social club dispensing liquors to members, see 12 L. R. A. (N. S.) 519; 20 L. R. A. (N. S.) 1095; 23 L. R. A. (N. S.) 192; 38 L. R. A. (N. S.) 101; 10 Ann. Cas. 386; Ann. Cas. 1912 A 1088. See, also, 23 Cyc. 205.