[No. 22692. Department Two. January 8, 1931.]

C. A. BURCKHARDT *et al., Appellants,* v. F. R. CHAMBERS *et al., Respondents.*[1]

*H. B. Butler,* for appellants.
*Poe, Falknor, Falknor & Emory,* for respondents.

[1]Reported in 294 Pac. 977.

BEALS, J.—During the winter of 1927, plaintiff Salmon and defendants Chambers and Chapin, who were friends and enjoyed in common the ancient and honorable sport of duck shooting, discovered, near the Federal bird refuge along the Strait of Juan de Fuca, a tract of land which was available for lease as a hunting preserve, and which was advantageously situated and adapted for that purpose. A year and a half later the three friends, together with three others, including the plaintiff Burckhardt, leased the tract, known as the ''Berner place,'' for five years, at an annual rental of one hundred and fifty dollars. The lease was taken in the name of defendant Chambers as trustee.

It seems to have been agreed that membership in the association or club should be limited to six, and that necessary expenses should be borne by the members in equal proportions. As an initial contribution, each member paid one hundred dollars towards the establishment of a common fund, and it seems that by consent of all Mr. Chambers received the payments and disbursed the money. A further payment of $46.53 was made by each member at the close of the 1928 season. It does not appear that Mr. Chambers ever went to the trouble of preparing an itemized statement of his disbursements. The six members were busy men, and they never took the trouble to formulate any articles of association, nor did they prepare any by-laws or rules by which they should be governed; they occasionally talked matters over, and discussed questions of policy, but the conduct of the operation was informal in the extreme.

Plaintiff Burckhardt was rather insistent that some formal rules be adopted and some system of accounting be followed, but his suggestions were never carried out. An informal meeting was held during the

month of March, 1929, at which time a committee was appointed to investigate the situation and ascertain what improvements, if any, were necessary, and the probable cost thereof. It does not appear that this committee ever functioned, but during the summer of 1929 the preserve was, to some extent, improved, and obligations were incurred for the expense in connection therewith, to meet which defendant Chambers levied what plaintiffs refer to as "assessments" against the six members of the club.

Plaintiff Burckhardt did not offer to pay his pro rata until October 22, 1929, when he tendered his check for the amount claimed to be due from him, at which time he was informed that he had been dropped from the association. Plaintiff Salmon having also been dropped, and the two having been denied the use of the preserve, they jointly brought this action, praying for an accounting and a dissolution of the association. At the close of plaintiffs' case, the court granted defendants' motion for a nonsuit, and entered judgment dismissing the action, from which judgment plaintiffs appeal.

It is evident that the association of the six men was of the most informal kind. The only property in which the members were jointly interested consisted of a lease, which was, of course, dependent for its existence upon the payment of the rent therein reserved. Whether or not, as contended by appellants, the members at the outset intended to formulate and adopt by-laws or rules for their future government, is immaterial. They did not do so, and the relationship remained vague and indefinite, there being no general policy outlined, save that the days that the members should shoot over the preserve were agreed upon. It is true, however, as contended by appellants, that the members of the club acquired property rights, to pro-

tect which they may in a proper case invoke the aid of the courts. It appears from the evidence that appellant Burckhardt was somewhat dissatisfied with the management of the affairs of the club, and wished to have matters of policy definitely agreed upon, and the amount which the members should pay and the manner in which the money should be expended definitely determined.

Appellants asked that respondents be enjoined, pending the trial of the action, from interfering with the use of the preserve by appellants, and from taking new members into the association; that respondent Chambers be required to account for the money which he had received; and that the association be dissolved and the property distributed to the persons entitled thereto. Appellants argue that they are entitled to this relief, as their reinstatement as members of the association, if the court should determine that they had been wrongfully expelled, would not be a proper or adequate remedy, nor would a permanent injunction against interference by respondents with appellants' use of the preserve furnish satisfactory relief. Appellants frankly take the position that such an association as this, organized for mutual recreation and pleasure, cannot function and accomplish its purpose while discord prevails among its members, and that the existence of such a condition defeats the very object of the club. Appellants therefore take their stand upon the proposition that the winding up of the association is the only fair and equitable solution, and that they are entitled to the relief which they ask. It is, of course, evident that the lease owned by the association is incapable of physical division.

This litigation is one of many demonstrations that the best way to conduct any group, club or association of persons, banded together for any common object,

howsoever informal, is to have the mutual rights and obligations of the members definitely agreed upon and understood, and to have written by-laws for the government of the organization, which are followed by the members in the course of their operations. This case, however, must be decided upon the facts as they appeared on the trial, notwithstanding the difficulty which courts always have in determining the vague and nebulous rights of persons who belong to informal organizations.

In the first place, it is evident from the nature of the association between the parties to this action that it was contemplated and was, indeed, necessary, that each member pay promptly his pro rata of the sum necessary to carry on the club. This was vital, as the rent had to be paid, the grounds had to be kept in condition, and the default of any member in paying his share might, unless his assessment was advanced by someone else, cause the termination of the lease and the end of the shooting rights enjoyed by the members. It appears that each member, during the year 1928, paid $146, that being his share of the total expenditure.

During the month of March, 1929, the members met, appellant Burckhardt being absent, he, however, admitting that he was seasonably advised of the time and place of the meeting, so that he could have attended the same had he found it convenient to do so. At this time there seems to have been some question in the mind of the appellant Burckhardt as to whether or not he would desire to shoot during the fall of 1929, he anticipating that he might go abroad. The shooting season was to open October first, and it appears respondent Chambers had advanced some money on account of expenses in connection with putting the property in shape for the fall season.

The association of the parties to this action was not for profit. The payment of a certain amount of expense each year would insure the members certain shooting privileges which they desired to exercise. It was not anticipated that the association would acquire any permanent property rights, and, as stated in 11 Corpus Juris, 922, § 2 and 930, § 25, such voluntary organizations are not partnerships, but confer upon the members only rights to the joint use of the club's property. We do not find any authority which supports appellant's contention that the court should dissolve the organization maintained by the parties to this action, and we hold that, under the state of facts here presented, appellants did not make a case which required the court to decree such dissolution, and either distribute the property or order the same sold. *Manning v. Canon City,* 45 Colo. 571, 101 Pac. 978, 23 L. R. A. (N. S.) 192; *In re Livingston Sportsmen's Association,* 2 N. Y. Supp. 63.

It would seem that appellants were, at least to some extent, negligent in failing to seasonably pay their share of the 1929 expenses, which had to be paid in order that the club members might enjoy the privileges of the preserve during the fall shooting season. Under the circumstances here disclosed, the burden of seeing that the money necessary to cover the club expenses is promptly forthcoming rests more strongly than usual upon the individual members. The service rendered by the member who acts as collecting and disbursing officer is purely gratuitous, and, because of the fact that at least the fixed carrying charges must be paid promptly in order to preserve the very subject-matter of the organization, each member must see to it that the call made upon him for funds is seasonably answered. The dissatisfaction with the way the club functioned felt and expressed by appellant Burck-

hardt did not justify his indifference to the matter of the prompt payment of his share of the expenses.

The burden of proof rested upon appellants, and the evidence introduced by them failed to establish that they were entitled to the relief which they demanded, and the judgment appealed from is accordingly affirmed.

MITCHELL, C. J., FULLERTON, HOLCOMB, and MILLARD, JJ., concur.