UNITED STATES v. GILLER.

(Circuit Court, W. D. Missouri, St. Joseph Division. April 5, 1892.)

INTOXICATING LIQUORS—ILLEGAL SALES—"RETAIL DEALERS."

An incorporated benevolent association, which sells, as such, to its members, for five cents each, tickets entitling the holder at a picnic of the association to a glass of beer or other refreshment, or to participate in some amusement, at his option, who, upon presentation of the ticket, and any number he may so see fit to purchase, obtains from the association beer therefor, which beer is the property of the corporation, as such, thereby becomes a dealer in malt liquors, within the act of March 1, 1879, § 18, (1 Supp. Rev. St., 2d Ed., 229,) which defines such dealer to be one

who sells or offers for sale in less quantities than five wine gallons at one time, where he does not deal in spirituous liquors. The case would be different where the beer was bought on previous contributions by the members, or as copartners in the purchase, and the assessment was based upon the proportion taken or consumed by each contributor, or like circumstance.

At Law. Trial of an indictment against John Giller for selling malt liquors without the payment of a license tax. Verdict of guilty.

Statement by PHILIPS, District Judge:

This case was submitted to the court, without the intervention of a jury, on the following agreed statement of facts: Defendant, at all times mentioned in the information, was an officer of the Bavarian Benevolent Society, a benevolent association duly incorporated under the laws of the state of Missouri. That among the objects of said society is the cultivation of social intercourse and friendship among Bavarian immigrants, and their descendants, resident in the vicinity of St. Joseph, Mo., and to provide for destitute members of the society. It is a custom of said society, in the warm season of the year, to assemble at picnics in the fields and groves in the neighborhood of St. Joseph, which picnics, to secure good order and harmony, and to promote the enjoyment of said members and their families, are conducted under the management of the officers of said association. That on such occasions refreshments are served, consisting of meats, bread, cake, and beer, which are purchased and taken to the ground by the officers of said association, and distributed to the members and families as demanded. That on entering the grounds the members can obtain as many tickets as they desire from the proper officer of the said society, paying five cents each, and each ticket entitles the holder to any one article of refreshment provided by the society, or to participate in any one exercise or game of amusement, which may also be provided. On one day in July last, said association had a picnic, of the description hereinbefore set forth, at Villa Rosa addition, St. Joseph, at which it furnished refreshments of the kind above stated, including beer, and which was distributed to the members in the manner above described. At said picnic, defendant was present, and participated in doing whatever was done in behalf of said society. Afterwards, on the 22d day of July, 1891, defendant was accused by some officer of the government with violating the law on the occasion described, and was notified to call at the internal revenue office, and take out a license, and warned that if he did not he would be arrested, and, supposing that it was required of him by law, he paid said collector an internal revenue tax for said society for a year beginning July 1, 1891, and shows to the court herewith the receipt given by the collector of the government to said society for said tax.

Hall & Pike, for defendant,

Cited Seim v. State, 55 Md. 566; Com. v. Ewig, 145 Mass. 119, 13 N. E. Rep. 365; Barden v. Montana Club, (Mont.) 25 Pac. Rep. 1042; Graff v. Evans, 8 Q. B. Div. 373; Tennessee Club v. Dwyer, 11 Lea, 452; Com. v. Smith, 102 Mass. 144; Com. v. Pomphret, 137 Mass. 564; Piedmont Club v. Com., (Va.) 12 S. E. Rep. 963; U. S. v. Howell, 20 Fed. Rep. 718.

G. A. Neal, U. S. Atty.,

Contra: U. S. v. Wittig, 2 Low. 466; People v. Andrews, 115 N. Y. 427, 22 N. E. Rep. 358; People v. Soule, 74 Mich. 250, 41 N. W. Rep. 908; Martin v. State, 59 Ala. 34; Chesapeake Club v. State, 63 Md. 446; State v. Essex Club, (N. J. Sup.) 20 Atl. Rep. 769; State v. Easton, etc., Club, (Md.) Id. 783; State v. Neis, (N. C.) 13 S. E. Rep. 225; State v. Bacon Club, 44 Mo. App. 86; 32 Cent. Law J. 98, 382.

PHILIPS, District Judge, (after stating the facts.) The statute defines a "retail dealer in malt liquors" as follows:

v.54f.no.4—42

"Every person who sells, or offers for sale, malt liquors, in less quantities than five gallons at one time, but who does not deal in spirituous liquors, shall be regarded as a retail dealer in malt liquors." 1 Supp. Rev. St. (2d Ed.) p. 229, § 18.

The only exceptions, exempting a party making a sale from the license tax, as a retailer, are specified in section 4, same volume, amending section 3244, Rev. St., as follows: Where the liquors have been received by the vendor as security for or in payment of a debt, or as executor, administrator, or other fiduciary, or where they have been levied upon by an officer under order or process of any court or magistrate, and where such spirits are sold by such person in one parcel only, or at public auction in parcels not less than twenty wine gallons, or in the case of a sale made by a retiring partner, or the representatives of a deceased partner, to the incoming, remaining, or surviving partner or partners of the firm, or, in case of a retail liquor dealer, or a retail dealer in malt liquors selling out his entire stock in one parcel, or in parcels embracing not less than his entire stock of distilled spirits.

While not as specifically stated as it should have been, it is quite inferable from the whole of the agreed statement that the beer in question was bought by the corporation and taken by it onto the ground, through its officers. The property in it, therefore, was in the corporation, and belonged to its assets. The corporation might, as far as the United States is concerned, give this property to whom it pleased. The United States could only interfere for the purpose of exacting a license fee, or visiting with punishment for failure to obtain such license when the corporation, or any one for it, sells the liquor without license. The corporation did not give this beer away, even to its constituency. How, then, did they obtain it? Its officers or agents, after buying the beer, took it upon the picnic grounds. It is true it was taken there for the sole use of its constituent members, but it was not parceled out among them ad libitum, as the common property of all. Such of its members, only, who first bought a ticket from the association, could obtain a glass of beer. The fact that such ticket gave to the purchaser the option of taking a piece of bread or meat, or some other article of food, or participating in some chosen diversion, does not affect the question involved. Under the arrangement made, a member might have bought fifty tickets, and obtained with them as many glasses of beer. Stripped of its modus operandi, and reduced to its practical effect, the transaction was the same as if each person had gone to the stand erected on the grounds, and paid the agent in charge five cents for a ticket, and immediately handed back the ticket, and received a glass of beer therefor. In other words, it was the same, in its results, as if the purchaser had gone to the stand, and handed the agent five cents, and received there a glass of beer. As there is no limit to the number of tickets a member might purchase under the arrangement, one member might have "treated" 50 other members of the association to beer. The money thus taken in went into the common fund of the corporation, and became a corporation asset, to be accounted for as such.

UNITED STATES *v.* GILLER.

We cannot shut our eyes to obvious facts, and say this was but an equitable method of apportioning the cost of the beer among the members of the company, by requiring him who took beer alone to pay the cost thereof. It is not stated what the beer cost the company, nor does it appear that the party who handled it on the grounds received any compensation therefor. In this age of "malt," it perhaps would not be too much to say that beer bought by the keg does not cost at the rate of five cents a glass, nor the fourth of it. The profit arising from the arrangement would go into the exchequer of the corporation. Palpably, the beer, while contributing to the social features of the occasion, could also easily be made a source of revenue to the company. Had it been designed merely as an equitable mode of distributing the beer among those who drank, the natural and simple way would have been for the managing officers of the company, by the direction or common consent of the constituency, to have either made a levy in advance on its members for the purchase of the beer, or required such as wished to indulge in the luxury to contribute sufficient money to buy the same, and pay for the handling thereof. It may be conceded that some such prior arrangement could be conducted on the basis of issuing to each contributor in advance a certificate or ticket showing the sum thus contributed, entitling the member to a number of glasses proportionate to the cost of the whole. Such an arrangement would bring the case within the condition of two or more parties who meet for social pleasure, and make up a common fund for the purchase of a keg of beer or other liquor. When thus bought, the article belongs to the parties in common. They do not become vendors of the liquor, any more than two partners who should buy liquor for their own use, and drink it between them, in such portions as suit their pleasure.

On the theory of the defendant, where is to be the limit as to either time or place or action to such an arrangement? How often may the association have such picnics? At how many places may they thus assemble under the claim of the social gathering, with its privilege? Might they not, in the heat of summer, "picnic" six days out of the week, and in the cold of winter might they not assemble in social conviviality as often in their "banquet hall," and dispense kegs of beer, at five cents a glass ad libitum, and cover the revenue arising therefrom into the treasury, to swell the assets of the corporation? And thus the members of the charitable and benevolent corporation would certainly acquire peculiar privileges over the unincorporated citizens. It is said, in answer to this, that the frequency of the occasion, and such transactions, may go to the trier of fact to determine whether or not such arrangement be a mere disguise for conducting a retail business in liquor, or whether it be merely accidental, and without the animo lucrandi. But the statute makes the act of selling, and not the good or bad intent of the seller, that which constitutes a retail dealer. Even a physician living in the country, who prescribes whisky for his patients, charging them for the liquor, is liable under this statute unless he has a license as a retail dealer. The test under the statute is, was the act a sale? Where the property belongs to a

corporation, a person, and it parts with it only on condition that he who takes pays therefor, this certainly possesses the elements of a barter and sale. If no purchaser of a ticket had taken beer at that picnic, "the stock" would have been left on the corporation's hands, as a part of its assets, and the loss, if any, would have fallen on the entire constituency.

While this statute, like any other penal statute, ought not to be so administered as to make it unnecessarily harsh and severe, it must nevertheless be kept in mind that this statute is designed to raise a revenue for the support of government. To accomplish this end the law is designedly rigorous and severe, and courts are compelled to so construe and administer it as to effect the legislative intent, which was to require all parties selling, or offering for sale, spirituous or malt liquors to first obtain a license therefor, as it is by means of the license that the revenue comes. No device or subterfuge can substitute mere form or semblance for actual substance.

While the facts of this case are somewhat peculiar, the principle involved has been settled consistent with this opinion by the adjudications in the federal jurisdiction. U. S. v. Whittig, 22 Int. Rev. Rec. 98; U. S. v. Woods, 24 Int. Rev. Rec. 150; U. S. v. Rolinger, 28 Int. Rev. Rec. 314; U. S. v. Kallstrom, 33 Int. Rev. Rec. 150. On the agreed statement of facts, the law is that a verdict of guilty should be returned, which is accordingly done.