## UNITED STATES v. ALEXIS CLUB.

(District Court, E. D. Pennsylvania. December 30, 1899.)

INTERNAL REVENUE—RETAIL LIQUOR DEALERS—SOCIAL CLUBS.

> An incorporated social club, which purchases a stock of liquors, and supplies the same to individual members for their consumption in its club rooms on their orders, and receives payment from them therefor, is a retail dealer in liquors, within the meaning of Rev. St. § 3244, which defines a retail dealer as any one who "sells or offers for sale" liquors in quantities less than five gallons at the same time, and is subject to the special internal revenue tax imposed by such section.

This was an action by the United States to recover a special internal revenue tax from defendant as a retail liquor dealer. On motion by defendant for judgment on special verdict.

James M. Beck, U. S. Atty., and Francis F. Kane, Asst. U. S. Atty., for the United States.

Thos. R. Elcock and Matthew R. Dittman, for defendant.

McPHERSON, District Judge. The facts upon which the question for decision arises appear in the following special verdict:

"The jury find in the above-entitled case the following facts:

"That the defendant is a bona fide organization organized in the year 1871, and incorporated under the laws of the state of Pennsylvania on the 10th day of December, 1881.

"That prior to July 1, 1897, and for some time after July 1, 1898, the said defendant had its club house and headquarters at the northeast corner of Seventh and Vine streets, in the city of Philadelphia, and in the First collection district of the state of Pennsylvania.

"That the said defendant had, during the period last mentioned, a bar on the third floor of the said club house, and kept a stock of malt and spirituous liquors for the consumption of the members of the said club only, and sold and furnished to them in quantities not exceeding five wine gallons; that is to say, simply by the glass or single drink. That the said liquors were purchased by a committee of the said club known as the 'refreshment committee,' which made a weekly report to the general weekly meeting of the members of the club of all purchases made on behalf of the said club. That after a resolution had been passed at such meeting of members for the payment of all purchases made, orders were signed by the president of the club, attested by the secretary, and the treasurer made payment out of the club's funds.

"That members of the club purchased with money from the steward checks which were used in payment for all refreshments bought, said checks being only sold to and used by members of the club. The furnishing of liquors was a mere incident to the use and enjoyment of the club. That, as a matter of fact, checks were not purchased in equal amounts by members of the club,

it being optional with each member to purchase none, or to purchase any quantity he might desire, and the money derived from the sale of such checks went into the treasury of the club.

"That the said club owned the property in fee simple at the northeast corner of Seventh and Vine streets, having owned the same since June, 1884, which cost the defendant, together with the library, over $20,000. Literary and musical entertainments for the members, their families and friends, were given from time to time, and, among other modes of recreation, the club maintained a bowling alley, pool and billiards, chess, and checkers.

"That the membership of the said club was limited, and among the requisites for membership the applicant was required to be a citizen of the United States.

"That the collector of internal revenue for the First collection district aforesaid returned the said defendant organization as a retail liquor dealer, and assessed a tax of $25 as such retail liquor dealer from July 1, 1897, to June 30, 1898. That said tax was not paid, and that, in accordance with law, a penalty of fifty per cent. was added, making a total indebtedness of $37.50 for the period last mentioned.

"That the said collector, on the last day of July, 1898, again returned the said defendant organization as a retail liquor dealer, and assessed a tax of $25 as such retail liquor dealer from July 1, 1898, to June 30, 1899, which latter sum not having been paid, the penalty of fifty per cent. was again added, making a further indebtedness of $37.50, and a total indebtedness of $75 for taxes and penalties claimed to be due the plaintiff by the defendant as such retail liquor dealer as aforesaid from July 1, 1897, to June 30, 1899.

"Upon the foregoing facts the jury find a special verdict in favor of the United States and against the defendant in the sum of seventy-five dollars ($75), if the court should be of the opinion that the law is with the plaintiff; otherwise, they find for the defendant."

The question for decision is this: Upon the foregoing facts, is the defendant a retail dealer in liquors, within the meaning of section 3244 of the Revised Statutes? That section provides in its fourth clause that such dealers shall pay a special tax of $25, and then goes on to give the following definition of a retail dealer: "Every person who sells or offers for sale foreign or domestic distilled spirits or wines, in less quantities than five wine gallons at the same time, shall be regarded as a retail dealer in liquors." That the defendant is a "person" is not now denied, and the question, therefore, may be stated thus: Is the transaction described by the special verdict such a "sale" of liquor by the club to its members as the section intends? If so, the defendant falls within the statutory definition, and must pay the tax. If not, no tax is imposed by the section.

Whether a club organized in good faith for the purpose of social enjoyment sells drink to its members when they order and receive this kind of refreshment, and pay for it, or whether the club is then engaged in distributing its stock of liquor among consuming members, has been much discussed and variously decided. The question has usually arisen upon the construction of a law licensing the sale of intoxicating drink, and the decisions that declare the transaction not to be a sale have naturally and properly been much influenced by the language of the particular law, and also by the fact that such a statute is generally—perhaps always—a penal statute, which punishes a violation of its provisions by fine and imprisonment, and is, therefore, to be construed strictly in favor of the accused. When such a statute speaks of a "dealer," or of a "dramshop keeper," or

of "selling by retail," or of "the business of selling," without defining these terms, the task of definition falls upon the trial court; and there may then be little difficulty in concluding that a social club does not "deal" in liquors, or is not engaged in the "business" of selling, within the common meaning of these words. Nearly all the cases that were decided before 1892 are collected and reviewed in an excellent article by Judge Endlich in 12 Cr. Law Mag. p. 541.

But section 3244 of the Revised Statutes differs in an important particular from the statutes that were construed in these cases, and in some others that are cited upon the defendant's brief. This section declares expressly what is meant by a retail "dealer," and necessarily implies what is meant by a "sale." Every person is a retail dealer "who sells or offers for sale foreign or domestic distilled spirits or wines in less quantities than five wine gallons at the same time." Nothing is said about selling as a business, or selling as an innkeeper; nor is there any other limitation of the words "sells or offers for sale" than the single limitation concerning the quantity to be sold at one time. In the face of language so clear, there is no room for construction. In my opinion, the plain meaning is that a single sale of spirits or wines, by any person, in a smaller quantity than five wine gallons, constitutes the seller a retail dealer in liquors, and makes him liable to pay to the United States a special tax of $25.

Did the defendant, then, sell liquor to its members? I shall not review the irreconcilable cases upon this subject, nor make the superfluous attempt to produce a new argument in support of my conclusion. I content myself with saying, briefly, that I agree with the general opinion of the community, and hold the transaction to be a simple, ordinary sale. If a chartered club, such as the defendant, buys liquor, the legal title to this property is in the corporation, and not in the members. If the club, having a stock of liquor on hand, should resolve to go out of business, it would scarcely be denied that the liquor could be sold only by the corporation, and not by one or more of the members. The legal title, then, being in the corporation, it is further to be observed that, when the title passes to a consumer, it passes by a transaction that exhibits every element of a sale, and shows no outward sign of being anything else. The intending consumer asks to be served with a definite quantity of intoxicating drink. The owner of the legal title to the liquor, acting by a paid servant, agrees to the request, requires the price to be paid in cash, or accepts the consumer's promise to pay in the future, and thereupon delivers the subject of the bargain. Nothing else takes place, and, if this is not a sale, but is really a partial distribution of the common stock, the truth is so veiled that the participants in the transaction, I venture to assert, rarely suspect that they are taking part in anything but a commonplace sale. It is safe to say that—except, perhaps, among those lawyers that may be familiar with the discussion upon the subject—to order and receive liquor at a club is always regarded as a sale, and I see no sufficient reason for declining to accept the popular estimate of an act so generally known and so easily comprehended.

There are decisions in several states supporting a similar conclusion concerning the effect of state legislation, but it is perhaps of more value in this court to observe that the question has been several times before the federal tribunals, and that the position now taken by the government has been uniformly upheld. U. S. v. Wittig, Fed. Cas. No. 16,748; U. S. v. Woods, Id. 16,759; U. S. v. Roliger, Id. 16,190a; U. S. v. Kallstrom, 32 Int. Rev. Rec. 152; U. S. v. Giller (C. C.) 54 Fed. 656.

Perhaps the dictum of Judge Simonton in U. S. v. Rennecke (D. C.) 28 Fed. 847, that the section under consideration permits a casual sale to a friend as a matter of personal accommodation, may be sound; but, even if this be conceded, the dictum does not apply to the facts now before the court. This is a revenue law of the United States, coming up for construction in a federal court, and in such an inquiry the decisions of other federal judges upon the same statute are naturally entitled to much weight.

At the argument of this motion the defendant's counsel stated that the government's demand was resisted because of the fear that, if the tax in suit were decided to be lawful, the state of Pennsylvania might also demand that a license be taken out under the laws of the state. It is hardly necessary to say, in reply to this apprehension, that my decision does not attempt to construe the license laws of the state, and, moreover, that the supreme court of Pennsylvania has distinctly ruled that such laws do not require a license to be taken out by a bona fide social club. Klein v. Livingston Club, 177 Pa. St. 224, 35 Atl. 606, 34 L. R. A. 94. Until the legislature sees fit to change the law in this respect, the defendant is in no peril from the state. Neither (to reply to another suggestion of counsel) is a mere dining club—an association of persons that meet at intervals, and pay a certain sum for food and drink—liable to pay this special tax, as long as the club itself does not sell the liquor consumed. The meetings of such clubs are often held at a hotel, and the members separately, or a committee as agent for the others, buy the liquor from the landlord, and direct it to be delivered to the consumers. Obviously this is not a sale by the club or by its members, but a purchase, and bears no resemblance to the state of affairs found by the special verdict.

I may perhaps be permitted to add a single word in conclusion. If the result that I have reached is correct, I believe it to be in the line of enforcing equality before the law; and equality before the law is a principle of American society, than which there is none more vital. Privilege and a privileged class are, and ought to be, intolerable; and it comes irritatingly near to a privilege when social clubs, offering advantages of comfort and luxury that are only within the reach of the more prosperous, escape a share of the public burdens, because a refined reasoning declares that they are doing no more than distributing a common stock of liquor among their members, while the robust sense of the community, not excluding the club members themselves, knows the transaction to be a sale.

Judgment will be entered for the United States upon the special verdict.