## WILSON v. UNITED STATES.
### No. 9815.

Circuit Court of Appeals, Sixth Circuit.
June 11, 1945.

John Young Brown, of Lexington, Ky., and Hobart F. Atkins, of Knoxville, Tenn. (Cleon K. Calvert, of Pineville, Ky., Hobart F. Atkins, of Knoxville, Tenn., W. L. Hammond, of Pineville, Ky., Arthur W. Rhorer, of Middlesboro, Ky., and Ray C. Lewis, of London, Ky., on the brief), for appellant.

Claude P. Stephens, of Lexington, Ky. (Claude P. Stephens and Ben L. Kessinger, both of Lexington, Ky., on the brief), for appellee.

Before ALLEN, HAMILTON, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Paul Wilson was convicted on a trial before the district court, without a jury, of selling whiskey as a wholesale dealer without paying the statutory tax required, and of selling at prices in excess of the maximum prices established by the Office of Price Administration pursuant to the provisions of the Emergency Price Control Act.*

Appellant claims that there was no evidence that he was carrying on the business of wholesale liquor dealer without a license, or selling above maximum prices.

A wholesale dealer in liquors is defined in Title 26 U.S.C.A. Int.Rev.Code, § 3254 (b), as follows:

"Except as otherwise provided, every person who sells, or offers for sale, foreign or domestic distilled spirits, wines, or malt liquors in quantities of five wine-gallons or more to the same person at the same time, shall be regarded as a wholesale dealer in liquors."

---

* Title 50 U.S.C.A.Appendix, § 901 et seq.

Title 26 U.S.C.A. Int.Rev.Code, § 3250 (a) (1), provides that wholesale dealers in liquors shall pay a special tax of $110.

It is admitted appellant did not pay this special tax.

To sustain its charge that he was a wholesale dealer in liquor, the Government introduced evidence of sales of liquor by Wilson in excess of five wine-gallons to Barrett and Dolen, two bootleggers, who purchased the liquor in a joint enterprise and who were engaged in hauling it together in the same automobile. Counsel for Wilson contend that the critical sale of liquor in this case was in excess of five wine-gallons, only if the total amount sold to *both* Barrett and Dolen were considered; and that if the sales were divided between them, the amounts would be less than five gallons to one person. In support of this contention, it is pointed out that Barrett, a witness on behalf of the Government, testified that he and Dolen would buy the whiskey and whatever they got, would be divided up and the cost split between them. It is further claimed on behalf of appellant that the proof in this case of a single isolated sale of more than five wine-gallons of liquor does not make the seller a wholesaler, and that it must be established beyond reasonable doubt that wholesaling is his occupation and that he is carrying on that business.

■ With regard to the first contention of appellant that there was no proof of a sale of liquor in excess of five wine-gallons to the same person at the same time, it clearly appears that the sale of liquor in excess of that amount was made to Barrett and Dolen as partners or (what is the same thing as far as this case is concerned), as joint venturers. In Title 26 U.S.C.A. Int.Rev.Code, § 3797(a) (1), it is provided: "The term 'person' shall be construed to mean and include an individual, a trust, estate, partnership, company, or corporation." In Section 3797(a) (2), it is provided that the term "partnership" includes a joint venture, and the term "partner," a member in such a joint venture. Barrett and Dolen were partners in the business of purchasing liquor. Whether they both negotiated for the purchase of the liquor in question is immaterial. It was sold to the same joint interest or partnership, and the amount sold was sufficient to bring the sale within the provision of the statute which constituted a seller of five wine-gallons of liquor to the same person at the same time, a wholesale dealer.

But counsel for appellant argue that while Section 3250 imposes the tax in question, and Section 3254 defines a wholesaler, the section of the statute which explains who are the wholesalers liable to the tax, the elements of the transaction that will result in guilt, and the penalties therefor, is Section 3253 which provides among other matters that the only person that can be a wholesaler liable for the special tax is: "Any person who shall carry on the business of a * * * wholesale liquor dealer * * *." It it contended that *one isolated sale does not constitute carrying on the business of a wholesale liquor dealer* and that, therefore, the evidence in this case did not prove Wilson to be such a dealer subject to the special tax, citing Bailey v. United States, 6 Cir., 259 F. 88. See also Ledbetter v. United States, 170 U.S. 606, 18 S.Ct. 774, 42 L.Ed. 1162.

■ The proper rule of construction of the statute, however, is that "a single sale is to be interpreted in the light of all the circumstances, and it may vary from being little or no evidence up to the point of being convincing evidence that the seller is carrying on the business; and that, in order to convict, the jury should be satisfied that the defendant either had liquor on hand, or was ready and able to procure it, in either case with the purpose of selling some or all of it to such persons as he might from time to time find or conclude to accept as customers." Bailey v. United States, 6 Cir., 259 F. 88, 92. When the evidence shows that a defendant owned a considerable quantity of intoxicating liquor which he had on hand at the place of the alleged sale, with the purpose of selling it to such persons as he might conclude to accept as customers and that he participated in a single sale, the law does not require proof of more than such sale to convict of the charge of carrying on the business of a wholesale liquor dealer without payment of the special tax. Sodini v. United States, 6 Cir., 261 F. 913. To sustain a conviction for carrying on the business of a wholesale liquor dealer without payment of the tax, it is not necessary that the evidence show more than a single sale, where there are corroborating circumstances tending to show that the defendant was engaged as a dealer in the wholesale liquor business. Johnson v. United States, 5 Cir., 84 F.2d 114. See: Rooks v. United States,

6 Cir., 263 F. 894; United States v. Maggio, 3 Cir., 126 F.2d 155.

There were such corroborating circumstances in this case.

Wilson conducted a wholesale and retail liquor business at Wallsend in Bell County, Kentucky. He had the necessary licenses and had paid the required taxes for the wholesale and retail business at this location. But he is charged with conducting a wholesale business in violation of the law not at Wallsend but at a place called Sharpe's Court, near Middlesboro, Kentucky, for which he had paid no wholesale liquor dealer's tax.

Wallsend had been voted dry in a local option election, and it appeared that Wilson's wholesale and retail business there was about to be suspended. He had entered into a lease agreement with the owner of Sharpe's Court, where a retail liquor business was then being carried on, and had applied for a state retail liquor dealer's license, which, according to regulations, is not issued until thirty days after the date of the application. This state retail dealer's license was thereafter issued to Wilson on February 29, 1944. He testified that he took over the business at Sharpe's Court on March 1, 1944. He was granted a wholesale liquor license by the Federal Government on April 1, 1944.

Wilson was charged with making the sale in question on February 21, 1944, and there was substantial evidence to support the trial court's finding that he did so. While, of course, Wilson denied having any connection with a sale of liquor from Sharpe's Court in February, he did state that, pending the granting of a state license to him for the operation of the place (and his taking over the business which was conditioned upon his receiving the license), he was at Sharpe's Court on a number of occasions in February. He appears to have spent a considerable amount of time there, both during the daytime and at night. He did not have any business there pending the granting of the license except, as he says, that he was planning to take the place over and wanted to observe the amount of business transacted. He had an option to purchase, as well as a contract to lease. The parties who the court found were purchasers from Wilson in wholesale lots at Sharpe's Court, had done business with him, at Wallsend. Wilson testified that they came to him at Sharpe's Court during February and wanted to purchase in wholesale lots and that he told them to go over to his place at Wallsend, about ten miles distant, for such purchases. On February 22, 1944, the day after the alleged sale was made, an investigator for the Alcohol Tax Unit interviewed Wilson at Sharpe's Court. Wilson was behind the counter. The only other person working in the place at the time was a clerk whom the investigator stated he saw conferring with Wilson. Wilson appeared to be in charge of the business. There were other people in the place, which was open for business, but the witness did not see any business carried on or any sales made. He stated that Wilson told him, in answer to his inquiry, that he had a deal on to take over and buy the place but that he couldn't operate it openly until the state license had been secured. Wilson testified that when he took the business over on March 1, there were about twenty-five or thirty cases of whiskey on hand.

On a review of the evidence, it is our determination that the trial court was justified in drawing the conclusion from the single sale proved and the surrounding circumstances that Wilson was engaged in carrying on the business of a wholesale liquor dealer at Sharpe's Court in violation of the statute requiring payment of the special tax. He had been carrying on the business of wholesaler at Wallsend. He intended to carry it on at Sharpe's Court, according to his own testimony—when he should have secured a federal license authorizing him to do so. He was spending a considerable part of his time there and appeared to be in charge of the place when the investigator saw him in February. There was a substantial amount of whiskey on hand when Wilson openly took over the business on March 1 —enough to have enabled him to sell in wholesale lots at that time. Appellant's counsel attack the testimony of the Government investigator that Wilson stated to him that he had not yet taken charge of the place *openly,* as unbelievable, on the ground that Wilson, obviously would not have disclosed surreptitious conduct of the business in violation of law to a Government officer. The credibility of witnesses is for the determination of the fact-finding tribunal. But without regard to any consideration of this contention, it may be said that it does not appear necessary to construe the testimony of the investigator as a statement on the part of Wilson that he was carrying on the business surrepti-

tiously, in order to arrive at the conclusion that he was actually engaging in business as a wholesale liquor dealer. The other circumstances above mentioned would amply justify such a finding.

■ We come, then, to the final question in the case: whether there was evidence to show that Wilson had made sales at prices higher than the maximum prices established by the Administrator of the Office of Price Administration, pursuant to the provisions of the Emergency Price Control Act of 1942. A price specialist of the Office of Price Administration testified that the maximum price legally established for certain liquor which appellant was accused of having sold at prices in excess thereof, was $45.95 per case of 24 pints. According to the applicable regulations promulgated by the Price Administrator, the maximum price was arrived at by the dealer according to a formula by which he added together what the liquor cost him, the transportation charges from point of shipment to destination, all federal and state liquor taxes in effect as of certain date, and an addition or mark-up of 33⅓% thereof.

When, on direct examination by Government counsel, the price specialist was asked if he knew what the wholesale price of the liquor in question was, he replied: "The wholesale price, I don't have that exact, but it is figured on a mark-up of 33⅓% over the wholesaler's maximum mark-up * * *." Nothing more was asked the witness as to the wholesale price by Government counsel or counsel for appellant, and his testimony as to the maximum price of the whiskey was not challenged or questioned on cross examination or by other witnesses. It is now contended that it appears that the witness did not know what the wholesale price was and that, therefore, this evidence was insufficient to establish what the maximum price was, inasmuch as this is figured by authorized additions to the wholesale price. No objection was made to the testimony as to the maximum price when it was given; there was no motion to strike it out; and the testimony was not challenged in any way at the trial. If the evidence were deemed incompetent by appellant's counsel when it was given, an objection or motion to strike would have called the attention of the Government to such claim and afforded the witness an opportunity to disclose his knowledge and the basis for his testimony.

It is to be remarked that he testified as to the maximum prices of different brands of whiskey mentioned in other counts of the indictment concerning which no question was, or is, raised as to his knowledge or qualifications. Furthermore, one of appellant's clerks testified in answer to a question regarding the prices of the whiskey: "Q. Don't you know that the ceiling price on Paul Jones was $45.90 and that you actually sold it for $45.60? A. Yes, sir." The Government's evidence was that Wilson had sold the whiskey in question for $90 a case.

In view of the fact that there was no objection to the testimony at the time it was given, no motion to strike, no attack made upon the qualifications of the witness, and furthermore, because of the testimony of appellant's own witness above mentioned and the fact that the contention seems to have arisen long after the trial, we find it to be without merit. See Opp Cotton Mills v. Administrator, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624; United States v. Lutz, 3 Cir., 142 F.2d 985; Marx v. United States, 8 Cir., 86 F.2d 245.

The judgment of the district court is affirmed.

