## HEATH v. UNITED STATES.
### No. 3647.

United States Court of Appeals
Tenth Circuit.
Sept. 9, 1948.

Rehearing Denied Oct. 6, 1948.

Ralph H. Noah, of Beloit, Kan., for appellant.

Lester Luther, Asst. U. S. Atty., of Topeka, Kan. (Randolph Carpenter, U. S. Atty., and Eugene W. Davis, Asst. U. S. Atty., both of Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant, Estel J. Heath, together with his brother, Charley F. Heath, was charged in two counts by indictment with carrying on the business of a wholesale liquor dealer without keeping the required records or paying the required tax in violation of 26 U.S.C.A.Int.Rev.Code, § 3253. The jury found Charley F. Heath not guilty on both counts. Appellant was acquitted on count one and found guilty on count two, failing to pay the tax.

Appellant contends that there was insufficient evidence to show that he was engaged in the business as a wholesale liquor dealer and that the court therefore erred in refusing to sustain his demurrer to the government's evidence and again in overruling his motion for judgment of acquittal at the close of all of the evidence; that the court also erred in refusing to give requested instructions and in the instructions which were given, and also erred in the admission of testimony.

 The pertinent part of 26 U.S.C.A. Int.Rev.Code, § 3253, provides: "Any person who shall carry on the business of a * * * wholesale liquor dealer * * * and willfully fails to pay the special tax as required by law, shall for every such offense, be fined not less than $100 nor more that $5,000 and be imprisoned for not less than thirty days nor more than two years."

26 U.S.C.A.Int.Rev.Code, § 3254, provides: "(b) Wholesale dealer in liquors. Except as otherwise provided, every person who sells, or offers for sale, foreign or domestic distilled spirits, wines, or malt liquors in quantities of five wine-gallons or more to the same person at the same time, shall be regarded as a wholesale dealer * * *"

Taken together, these two sections mean that one is a wholesale dealer in liquor if he sells liquor in the course of business in quantities of five wine-gallons or more to the same person at the same time. The gist of the offense is engaging in or carrying on the business of a wholesale liquor dealer as defined in the Statute, without paying the tax, and not the sale of the liquor itself. Proof of sales is material only as it tends

to prove or disprove that the accused is carrying on the business.

Appellant's position is that proof of one or a few isolated sales of liquor is insufficient to prove that one is engaged in business. He, therefore, contends that when the government offered proof of only two isolated sales, it failed to produce evidence warranting the submission of the case to the jury on the question whether appellant was engaged in the liquor business as a wholesale dealer.

"Doing business" is a term with a well established and generally understood meaning. It connotes a venture or undertaking in a particular line of endeavor extending over a period of time.[1] While the profit motive is not essential to carrying on business, profit generally is the motivating cause of business undertakings.

A number of cases have considered the question whether a few isolated sales of liquor are sufficient to establish one as being engaged in the liquor business. While on first blush, it might appear that there is some conflict in the decisions, a careful reading thereof will indicate that fundamentally they are in accord. The question in each of these cases was whether the finding that the accused was engaged in business was supported by the facts in the case, and what the court said must be interpreted in the light of the facts and circumstances in each case. In the interest of brevity these cases set out in footnote number two[2] will not be further discussed. Apparently no court has been called upon to determine whether a single sale of liquor unattended by any circumstances other than that it was an ordinary business transaction consummated in the usual way is sufficient to support a finding that the accused is engaged in such business, nor does the decision in this case require us to answer that question. There were abundant facts and circumstances surrounding these two sales which, if believed by the jury, would warrant it in finding that appellant was engaged in the wholesale liquor business.

A brief outline of the testimony of Benjamin J. Kepler, a government agent and the government's chief witness on this question, is as follows. Kepler testified that he went to Salina at the direction of his superior for the purpose of investigating appellant and others to determine whether they were engaged in the liquor business without paying the tax or keeping the records; that when he reached Salina he called appellant from a hotel and arranged an appointment with him; that when they met, he told appellant he was a student at the college in Salina and that he wanted to make some money on the side by selling liquor and would like to buy some whisky from appellant; that appellant replied that he did not need his business and that he already had enough whisky business, but that he finally said, "Well, I think I can handle you all right." Kepler testified that they then arranged a meeting for that night out in the country where appellant delivered fifty-seven fifths and sixty-seven pints of liquor and was paid therefor $124; that on February 6, 1947, following the first meeting, Kepler again called appellant from a Salina hotel and arranged a meeting with him; that when they met he told appellant he wanted some more whisky; that appellant said he was short on pints but could let him have all the fifths he wanted; that they arranged

[1] Black's Law Dictionary, Page 283; Vol. 1, Bouvier's Law Dictionary, Rawles Third Rev., page 406; Massachusetts Protective Association v. Lewis, 3 Cir., 72 F.2d 952; 12 C.J.S., Business, page 763.

[2] United States v. Logan, 26 Fed.Cas. page 990, No. 15,624; United States v. Jackson, 26 Fed.Cas. page 556, No. 15,-455; United States v. Feigelstock, 25 Fed.Cas. page 1058, No. 15,081; United States v. Stafford, D.C., 20 F. 720; United States v. Clare, D.C., 2 F. 55; United States v. Angell, C.C., 11 F. 34, 35; United States v. Rennecke, D.C., 28 F. 847; United States v. Giller, C.C., 54 F. 656; Ledbetter v. United States, 170 U. S. 606, 18 S.Ct. 774, 42 L.Ed. 1162; Bailey v. United States, 6 Cir., 259 F. 88; Wilson v. United States, 6 Cir., 149 F.2d 780; United States v. Bonham, D. C., 31 F. 808; Jenkins v. United States, 5 Cir., 149 F.2d 118; Johnson v. United States, 5 Cir., 84 F.2d 114; Rood v. United States, 4 Cir., 7 F.2d 45.

another meeting in the country for the delivery of the whisky; that he met appellant and his two brothers, Charley and Raymond; that he received the whisky and paid for the same by giving Charley $150 in marked bills. The marked bills were found on him after he was placed under arrest and taken to the Sheriff's office.

It would be difficult from this evidence, if believed, to reach any other conclusion than that appellant was engaged in business as a wholesale liquor dealer. Appellant, in his testimony, admitted that he had two conversations with Kepler but denied that he offered to sell him any liquor. On the contrary, he testified that Kepler tried to sell him some liquor and that he and his two brothers met Kepler in the country on the night of February 6, 1947, for the purpose of buying some liquor from him, but before any liquor was transferred or before any liquor was seen by him, they were placed under arrest by Kepler. Appellant's explanation of the $150 in marked bills which were found on Charley after the arrest was that this money was placed in Charley's pocket by Kepler after he was arrested and handcuffed. Apparently the jury was of the same view as we are that this story was too fantastic for belief. The question whether appellant was engaged in business as a wholesale liquor dealer was properly submitted to the jury.

 Complaint is made that the court erred in admitting hearsay testimony, particularly the testimony of Dan O. Cain, Investigator in Charge of the Alcohol Tax Unit, Bureau of Internal Revenue for Kansas.

Dan O. Cain testified that he sent Kepler out with instructions to make an investigation. In response to a question regarding the nature of these instructions, he testified that he instructed Kepler to attempt to make a case against the Heath brothers who had been reported for a period of time as being wholesale liquor dealers and who did not have a wholesale dealer's tax stamp. He was then asked to state why he directed an investigation of Estel. He started to answer, "For the reason that I have received numerous reports—one source was a sheriff—" Objection had been made to all his testimony on the ground that it was hearsay. These objections had been overruled but at this point the court reversed its previous rulings and sustained a motion to strike all this testimony and admonished the jury to disregard it. Thereafter, Cain was permitted to answer the following question. "Why did you select Mr. Heath as one who should be investigated?" His answer was "Because of my previous knowledge of their liquor activity." Appellant asserts that the admission of this single answer constituted reversible error. With this we do not agree.

Not only was the answer in question competent but the evidence outlined above which was stricken was likewise competent for the same reason and should have been received. This evidence was not offered for the purpose of establishing the guilt of appellant. For that purpose it would be hearsay and therefore incompetent. It was offered for the purpose of justifying the entrapment of appellant. At the conclusion of Kepler's direct testimony, he was cross-examined by appellant's attorney to establish that he entrapped appellant into making these sales, if they were made. This injected the defense of entrapment into the case and placed upon the government the burden to justify the entrapment of the appellant. It is well recognized that officers may entrap one into the commission of an offense only when they have reasonable grounds to believe that he is engaged in unlawful activities. They may not initiate the intent and purpose of the violation.[3] In a case of entrapment, it is incumbent on the government to prove reasonable grounds to believe that the intent and purpose to violate the law existed in the mind of the accused.[4]

3 Price v. United States, 165 U.S. 311, 17 S.Ct. 366, 41 L.Ed. 727; Grimm v. United States, 156 U.S. 604, 15 S.Ct. 470, 39 L.Ed. 550; Goode v. United States, 159 U.S. 663, 16 S.Ct. 136, 40 L.Ed. 297; Andrews v. United States, 162 U.S. 420, 16 S.Ct. 798, 40 L.Ed. 1023.

4 United States v. Certain Quantities of Intoxicating Liquors, D.C., 290 F. 824; Swallum v. United States, 8 Cir., 39 F.2d 390; Mitchell v. United States, 10 Cir., 143 F.2d 953, 957.

The most serious question relates to the complaint that the court erred in refusing to give requested instructions and in the instructions that were given. Appellant requested the court to give the following instruction which was refused. "You are instructed that the defendants are not charged with the crime of selling intoxicating liquor in wholesale quantities but are charged with being engaged in carrying on the business of wholesale liquor dealers in Saline County. An isolated sale does not constitute the carrying on of wholesale liquor business but is only a circumstance which together with the other facts and circumstances in the case may be considered by you in determining whether or not the defendants acting jointly, or either one of the defendants acting separately were engaged in carrying on the business of wholesale liquor dealers in Saline County."

The failure to give this instruction, if it be conceded that it correctly stated the law, would not be grounds for reversal if the court did adequately instruct the jury on the issues as framed by the evidence. While the court's general instruction as to what constituted doing business is not free from ambiguity, we think that the court's specific instructions relating to the evidence in the case were sufficient to correctly guide the jury in its deliberation. Thus the court said: "If you find and believe from the evidence beyond a reasonable doubt * * * that the defendants, or either of them, made sales of whiskey in quantities of five wine gallons or more to the same person at the same time, on or about the date charged in the indictment * * * then it is your duty to find such defendant or defendants guilty of the offenses charged in both counts of the indictment herein. As elsewhere explained in these instructions, however, you will analyze carefully the evidence as it pertains to each defendant and, unless you are convinced of the guilt of such defendant beyond a reasonable doubt, it is your duty to return a verdict of not guilty as to such defendant."

The court further instructed the jury that, "In weighing the testimony of the witnesses, you may take into consideration their appearance and manner while testifying, their means of knowledge, apparent intelligence or ignorance, interest or want of interest in the result of the case, and all other facts and circumstances appearing on the trial which will aid you in arriving at the truth."

After the jury had begun its deliberations, it was brought into court for further instructions. In its further instructions to the jury, the court, among other things, said: "I have tried to point out to them that it seems to the Court that the narrow issue to be determined here is whether or not the sale on December 6, 1947, of the cases introduced in evidence in this case as Exhibits 2–A, 2–B and 2–C, were made under the circumstances related by the Alcohol Tax Unit investigators or whether they were made under the circumstances— or whether the transaction of February 6, 1947 was as related by the defendants. That, I think, is your issue of fact, gentlemen of the jury."

The effect of these instructions considered in their entirety was to tell the jury that in determining whether the defendants were engaged in business as wholesale liquor dealers they should consider all the testimony and circumstances surrounding the two sales. The only question in the case was whether these two sales were made as testified to by the government's witnesses. There was no claim or circumstances warranting a claim that the sales were other than ordinary business transactions, if made at all. If the two sales occurred as testified to by the government, they clearly established, as a matter of law, that appellant was engaged in carrying on the business of a wholesale liquor dealer. Whether these transactions occurred as testified to by the government's witnesses was a question of fact for the jury's determination. This issue of fact was submitted to the jury by the court when it instructed that if the jury found that the defendant made the sales as testified to by the government witnesses, it should return a verdict of guilty.

Affirmed.