**JENSEN v. UNITED STATES.**

No. 14983.

United States Court of Appeals
Eighth Circuit.

June 17, 1954.

Albert L. Habhab, Fort Dodge, Iowa, for appellant.

F. E. Van Alstine, U. S. Atty., Sioux City, Iowa (Richard W. Beebe, Asst. U. S. Atty., Sioux City, Iowa, on the brief), for appellee.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

John Everett Jensen has appealed from a judgment and sentence based upon the verdict of a jury finding him guilty under an indictment which charged that during the months of July, August and September, 1952, he carried on the business of a wholesale liquor dealer in the Central Division of the Northern District of Iowa, and willfully failed to pay the special tax required by federal law, in violation of § 3253, Title 26 U.S.C.A.

At the close of the evidence, Jensen moved for a directed verdict of acquittal, and, after the jury had returned a verdict of guilty, moved the court for a judgment of acquittal, and, in the alternative, for a new trial. His motions were denied. He asserts that the District Court erred in failing to direct a verdict in his favor and in failing to en-

ter a judgment of acquittal after verdict.

Section 3254(b), Title 26 U.S.C.A., provides that " * * * every person who sells, or offers for sale, foreign or domestic distilled spirits, wines, or malt liquors in quantities of five wine-gallons or more to the same person at the same time, shall be regarded as a wholesale dealer in liquors: * * *."

By his appeal Jensen challenges the sufficiency of the evidence to make the issue of his guilt one of fact for the jury. It must be remembered that "In considering the sufficiency of the evidence to sustain the verdict of the jury, this Court must take that view of the evidence which is most favorable to the government, must give to the government the benefit of all the inferences which reasonably may be drawn from the evidence; and must refrain from concerning itself with the credibility of witnesses and the weight of evidence. Holmes v. United States, 8 Cir., 134 F.2d 125, 130, certiorari denied 319 U.S. 776, 63 S.Ct. 1434, 87 L.Ed. 1722; Egan v. United States, 8 Cir., 137 F.2d 369, 375, 376; Miller v. United States, 8 Cir., 138 F.2d 258, 259." Affronti v. United States, 8 Cir., 145 F.2d 3, 5.

Viewed in the light most favorable to the Government, the evidence was, in substance: that sometime in the summer of 1952 Jensen's Ford Pickup truck, "full of whiskey," was in a cornfield on the Less farm near Fort Dodge, Iowa; that in August of 1952 Jensen asked James M. Williams, of Fort Dodge, a bartender in Ralph's Tap Room, if he could use some whiskey; that Williams said that he could, and Jensen replied that he would have some coming in a few days; that about August 5, 1952, Paul Ross told Williams that Jensen had the whiskey; that this was in the morning about 8:30 or 9:00 o'clock; that Williams met Jensen and Ross east of town on a country road; that Ross took Jensen back to town and they brought out a carload of whiskey in a Buick automobile; that they stopped the car and took ten cases of whiskey out of it, and Williams put it into his car; that he told Ross to come to the tavern and get the money for it, because Williams did not want Jensen coming in; that Williams paid Ross for the whiskey; that Jensen was driving the Buick automobile which contained the whiskey; and that Williams got 240 pints in that transaction.

The Government's evidence further showed that about September 20, 1952, Williams met Jensen in the Blue Bomber Tavern, and Jensen asked him if he (Williams) could use more whiskey; that Williams said that he could, and would take 20 cases; that on the morning of September 26, 1952, Williams agreed to meet Ross at the Less farm to get one case of whiskey at noon and the other 19 cases that night; that when Williams went out to the farm at noon he got the one case and saw Everett Jensen's Ford truck there "full of whiskey"; that Williams went back to the farm that night; that Jensen, Ross and Al Less were there; that they took about 12 cases out of the cornfield and another 7 cases off the top of the Jensen truck; that Jensen helped get the whiskey out of the cornfield and got up on the truck and handed the whiskey from the truck to Less; that Jensen had quoted Williams a price of $40.00 per case; and that Williams paid Ross $400 for the whiskey he obtained in August and $800 for the 20 cases of whiskey he obtained in September. The Government proved that Jensen did not pay the special tax required of a wholesale liquor dealer.

Jensen testified on his own behalf as follows: that he lives in Fort Dodge, Iowa; that he worked on a farm in the summer of 1952; that he then lived near the Blue Bomber Tavern, which he believed was owned by Paul Ross and his brother; that at no time did he (Jensen) talk with Williams about the sale or purchase of whiskey; that Jensen was acquainted with the Less family, but had nothing to do with making arrangement with them for the storage of whiskey; that he paid them no rental; that he never offered to sell whiskey to Williams and

never received pay from him for whiskey; that he was present on the Less farm on two different occasions when Williams loaded whiskey into his car; that on the first occasion, Ross, Williams and Jensen carried whiskey from the cornfield and put it in Williams' car; that Williams drove off; that Williams did not talk to Jensen about paying any money; that Williams did talk to Ross about money and told him to "stop down to the tavern and pick up some money"; that Jensen's truck was not there on the first occasion and he had nothing to do with putting the whiskey on the farm.

Jensen further testified that—at the time of the second transaction with Williams—Ross, Williams, Jensen and three of the Less family were there; that some of the whiskey was on Jensen's truck; that he had loaned the truck to Ross the afternoon before; that there was no whiskey on it when he loaned it; that he did not see the truck until noon the next day; that when he saw what was on the truck he told Ross that "I didn't particularly like the way he was doing business with my truck"; that after awhile Williams came and wanted a case of whiskey; that Ross asked Jensen to take Williams to the cornfield to get a case of whiskey, which Jensen did; that he did not see Williams pay Ross; that Ross took Jensen to town; that Jensen had asked Ross at noon for Jensen's truck, but Ross said that "it would be twice the work to have to unload the truck"; that Ross told Jensen to meet him at seven o'clock; that Jensen met him and they went to the Less farm in Ross's car, and loaded the car with whiskey; that Williams drove up and said to Ross, "Can I get my whiskey now," and Ross said: "Yes, just a minute. We will load your car now"; that "all of us proceeded to load both cars"; that after both cars were loaded, Williams and Less drove off together, and Ross drove off by himself; that Ross returned to the farm shortly and "we loaded his car again"; that after Ross left, Jensen handed the whiskey down from his truck "to the other fellows"; that he then took his truck home; and that Williams did not pay him any money.

In rebuttal, Williams testified that on the night he helped load the whiskey in his car, Jensen, at the request of Ross, used Jensen's truck to deliver whiskey probably to the home of the brother of Ross; and that Ross and his brother were operating the Blue Bomber tavern together.

Eldo Less testified to a discussion he had on the night whiskey in Jensen's truck was being handled on the farm; and that Jensen told him that on the previous night "the truck pretty near didn't make it up there; that his brakes were not working and the old truck was not running too good."

■ That there was a wholesale illicit liquor business being carried on or from the Less farm in the vicinity of Fort Dodge, Iowa, was conclusively shown by the evidence of the Government; there was direct evidence that Jensen had twice offered to sell whiskey in wholesale quantities to Williams, and that Williams had twice procured whiskey in such quantities, with Jensen present and taking part in the deliveries. Whether Jensen was carrying on the business and had willfully failed to pay the tax, as the Government claimed, or whether he was acting as a sort of flunkey for Ross, as Jensen claimed, was clearly a question of fact for the jury. The jury were not required to believe Jensen's testimony. They were the judges of the facts, the credibility of the witnesses, and the weight of the evidence. They were, in our opinion, entirely justified in concluding that Jensen was guilty of the offense charged in the indictment. See and compare, Heath v. United States, 10 Cir., 169 F.2d 1007; Jenkins v. United States, 5 Cir., 149 F.2d 118, 119.

The District Court did not err in submitting the case to the jury, and could not properly have done otherwise. The judgment appealed from is affirmed.